Jessie Louise **CLIFTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 38970.

Court of Criminal Appeals of Texas.

Jan. 19, 1966.

Rehearing Denied March 9, 1966.

————◆————

Robert B. Billings, Dallas, for appellant.

Henry Wade, Dist. Atty., Dallas, Texas, Robert H. Stinson, William F. Alexander and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is unlawful possession of a narcotic drug, heroin; the punishment, ninety-nine years.

At about 9:10 p. m. on November 23, 1964, Detective C. H. Cavander of the Dallas Police Department had a telephone conversation with a reliable informant who had given him accurate information on several prior occasions. The informant disclosed that appellant and a male companion, Freddie Lee Hall, were at a certain record shop and were about to leave town; that they had loaded their clothing into Hall's black and white Buick automobile; and that appellant possessed a large quantity of heroin. The detective testified that he knew Hall and appellant to be users or dealers of narcotics, and knew that they had a car matching the description furnished by the informant.

Within ten to twelve minutes after receiving this information, Detective Cavander and two other officers arrived at a vantage point from which they could observe the record shop and an adjacent parking lot. Shortly thereafter they observed Hall drive into the parking lot in the described automobile. Appellant, a passenger, remained in the car while Hall got out, looked around, walked over to the record shop, looked around again, and went into the building. Upon reappearing, Hall again looked around, then got into the car, the back seat of which was loaded with clothing and suitcases, and drove off.

The policemen followed appellant and her companion in an unmarked squad car for approximately seven blocks until the Buick stopped for a red light, at which time the officers jumped from the squad car with drawn pistols and ordered appellant and Hall out of their car. Officer E. E. Taylor testified that he observed, as appellant complied with this order, that there was an unusual bulge under the sweater she was wearing, and that he told her to give him whatever she had concealed in her brassiere. She handed the officer a hypodermic needle, a syringe, and a box. Despite appellant's denials, it appeared to the officer that she still had something concealed under the sweater, and she was taken to the city jail where a search of appellant's person by a jail matron produced 15 packets of a substance later identified as heroin.

■ We find the evidence sufficient to sustain the verdict.

Appellant contends that the admission of this heroin into evidence constituted error because the evidence was the fruit of an illegal search incident to an unlawful arrest.

Prior to admitting the narcotic drug into evidence, the trial judge conducted a hearing out of the presence of the jury at which, in addition to the facts set out above, it was shown that the time required to obtain an arrest and search warrant would have been about one and a half hours. The state also introduced into evidence Section 37–5 of Vol. 2, Revised Code of Criminal Ordinances of the City of Dallas, Texas, which authorized the arrest without a warrant of any person found under circumstances reasonably tending to show that such person has been guilty of some felony. At the

conclusion of the hearing the trial judge admitted the evidence.

In Jones v. State, Tex.Cr.App., 264 S.W.2d 722, police officers were informed that a person answering a certain description could be found at a specified time and place with marijuana in his possession, and there was no time to obtain a warrant. The officers proceeded to the designated place and observed a person answering the precise description they had been given. Twenty marijuana cigarettes were found in this person's pocket and, over objection that this evidence was unlawfully obtained, were admitted into evidence at his trial. This Court held that the officers, being informed that the described person was in possession of marijuana, were authorized to search his person, the information constituting probable cause for the search and there not being sufficient time to secure a warrant.

In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, a federal narcotics agent was informed by a reliable paid informer that the defendant in that case was peddling narcotics to several addicts in Denver and that he would return from Chicago to Denver, bringing back a quantity of heroin, on the morning of either September 8 or September 9, 1956. The informer gave the agent a detailed physical description of the defendant and the agent arrested him without a warrant upon his arrival by train. Holding that heroin obtained from a search incident to that arrest was competently received in evidence, the U. S. Supreme Court said:

"The information given to narcotic agent Marsh by 'special employee' Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a 'fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true." 358 U.S. 313, 79 S.Ct. 333.

In Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, where the U. S. Supreme Court reversed appellant's conviction because a lack of probable cause to arrest appellant rendered unlawful his subsequent search, the Court contrasted the facts in Draper, supra. After describing the verified information of the informer in Draper, the Court stated:

"In complete contrast, the record in this case does not contain a single objective fact to support a belief by the officers that the petitioner was engaged in criminal activity at the time they arrested him.

\*   \*   \*   \*   \*   \*

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." 379 U.S. 95, 96, 85 S.Ct. 228.

■ In the present case, the officer's information came from an informer of proven reliability. Prior to appellant's arrest, the officers had personally verified every part of the informer's story except whether or not appellant was in possession of heroin and they were aware of appellant's prior

association with narcotic drugs. We find that the trial court committed no error by admitting into evidence the heroin seized when appellant was searched incident to her arrest, for the facts available to the officers at the moment of appellant's arrest reasonably tended to show that appellant was guilty of a felony. Her arrest, and her search incident to that arrest, were lawful.

■ Appellant further contends that the substance introduced into evidence had not been properly proved to be heroin because the chemist who so testified was not the same person who performed the analysis. We do not agree. The record reflects that the witness, Doctor Morton F. Mason, was Director of the Dallas City Criminal Investigation Laboratory; that he was present in the laboratory when the tests were conducted; that he personally supervised the employees who performed the actual mechanical manipulations involved in conducting the tests; that he personally worked on each of the specimens; and that he personally examined the results of each analysis. We further observe that the witness was testifying from the official records of his laboratory. This contention is without merit. Dagley v. State, Tex.Cr.App., 394 S.W.2d 179.

■ Appellant also makes complaint of the state's argument, alleging that counsel commented upon appellant's failure to testify in her own behalf when he said:

"We do not know how this woman makes her livelehood, all we know about her is that she had this quantity of heroin, the thing which no one can possess."

Upon appellant's objection, the punctilious trial judge sustained this objection and instructed the jury to disregard this remark.

In Alford v. State, 158 Tex.Cr.R. 311, 255 S.W.2d 519, state's counsel argued:

"The defendant did not introduce any evidence as to his job and what he did for a living and as far as you gentle-men are concerned, you don't know what the defendant does for a living."

This was held not to be a reference to the failure of appellant to testify. See also Webb v. State, 119 Tex.Cr.R. 94, 45 S.W.2d 609.

Other informal bills of exception pertaining to the state's argument disclose no reversible error.

■ On the morning of February 9, appellant made a motion to dismiss the jury panel and for continuance because of alleged discrepancies in the jury selection procedure. It appears from the statement of facts adduced at a hearing on that motion that the panel was examined by both appellant and the state on February 8, the day before this hearing, and that the court recessed that evening prior to either party exercising his peremptory challenges. The following morning appellant submitted his jury list to the court clerk with his challenges struck, and shortly thereafter he was informed that the second juror on the jury list had been excused because of an emergency trip to the hospital, whereupon appellant's counsel retrieved his list from the clerk. At the conclusion of the docket call, and after announcing that juror number two was excused, the court tendered the jury panel to both parties for further examination. Appellant's motion was then presented. At this point of the proceedings, appellant could have examined the panel had he desired. The court had not called for the list of challenges from either party. It is possible that juror number two would have been challenged by the state anyway (indeed, the state in its answer to appellant's motion for new trial on this ground, alleges that they did so). There is no showing that a jury was not selected from the regular panel, or that the members of the jury were not jurors acceptable to appellant. At the conclusion of the hearing, the trial court overruled appellant's motion and again advised appellant that he could examine the jury panel further before turning in his list of challenges. We fail to see any

transgression of the statutory provisions pertaining to jury selection, nor do we see that appellant was prejudiced.

We have considered appellant's other informal bills of exception with care and find that no reversible error is reflected by any of them.

The judgment is affirmed.