**Harry GREEN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 42642.**

Court of Criminal Appeals of Texas.

March 11, 1970.

Rehearing Denied April 22, 1970.

---

Dennis White, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Camille Elliott, James P. Finstrom, Kenneth Blassingame, and J. R. Ormesher, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for the possession of heroin; the punishment, eighteen years.

The appellant's second ground of error is that his trial counsel was incompetent for the reason that he knew the appellant had an abrasive personality and that all of his testimony would be damaging to him and counsel should not have allowed him to testify.

The appellant testified only before the court on the issue of punishment. He admitted that he was a user of narcotics, had been a narcotic addict since 1948, and had had numerous felony convictions. On the guilt stage, the appellant called as witnesses five of the six persons who were present when the officers searched the apartment, and the effect of the testimony of the five persons was that he was an innocent victim of circumstances by being where heroin

was possessed and being used. The second ground of error is overruled.

It is contended that the prosecutor committed error in his closing argument when he told the jury that, "We will be back down here again trying this case over if you go back there and don't follow the law."

The court sustained appellant's objection that it was improper, instructed the jury to disregard the argument, but overruled a motion for mistrial.

The prosecutor immediately made the same argument again, appellant's objection was sustained, and the court instructed the jury to disregard it. No motion was made at this time for a mistrial.

Immediately before the argument complained of, the prosecutor had referred to the court's charge as containing the law of the case, and told the jury that it was not proper or right for one of the jury to discuss a fact not in evidence. No reversible error appears. The third ground of error is overruled.

It is contended that the affidavit does not show that probable cause existed for the issuance of the search warrant; and that the affidavit does not sufficiently describe the place to be searched.

Omitting the formal parts, the pertinent portions of the affidavit for the search warrant are:

"* * * one Hugh Luster and person or persons unknown did then and there unlawfully possess and does at this time unlawfully possess a narcotic drug and a dangerous drug, to-wit: Heroin in a— apartment being described as a two story apartment house located at 2712 Holmes Street, apartment 203 in City of Dallas, Dallas County, Texas, which said Apartment is possessed, occupied, under the control and charge of Hugh Luster and person or persons unknown.

"My belief of the aforesaid statement is based on the following facts:

"I have been informed of the foregoing setout facts by a person who I know to be reliable, credible and trustworthy, who states the following facts: That the affiant has received information in the past twenty four hours from a confidential informant that Hugh Luster has a large quantity of *H*eroin concealed in his apartment at 2712 Holmes Street, apartment 203. That the informant has been in the apartment in the past twenty four hours and has seen the *H*eroin in the apartment. That Hugh Luster is using and dealing the *H*eroin. That he is selling the heroin in capsules and is selling them for seven dollars a capsule*s*. The informant further states that he has been in the apartment in the past twenty four hours and that when Luster sells the capsules of *H*eroin to these people they shoot the *H*eroin into their veins while they are in the apartment. The informant states that he has been to this apartment on other occasions and has seen Luster with the *H*eroin. That Luster keeps the *H*eroin in the apartment. That Luster keeps the syringe and needle hidden outside of the apartment and when he sells the *H*eroin he goes outside and gets the needle and syringe. The affiant and other members of the Narcotic Section of the Dallas Police Department have had this address under visual surveillance and have seen known narcotic users going to and from Luster's apartment. The informant has given the affiant information many times in past and it has always been true and correct. The informant is a reliable, credible and trustworthy person."

The affidavit sets forth a sufficient factual basis to satisfy the magistrate that grounds existed and authorized him to find that probable cause was shown for the issuance of the warrant. Gaston v. State, Tex.Cr.App., 440 S.W.2d 297; Nus v. State, Tex.Cr.App., 440 S.W.2d 310;

Aguilar v. State, Tex.Cr.App., 444 S.W.2d 935.

■ The description of the premises was sufficiently definite to enable the officers to locate and distinguish the premises to be searched from other places in the community. 51 Tex.Jur.2d 700, Secs. 27–28; Wilson v. State, 106 Tex.Cr.R. 75, 290 S.W. 1103. This ground of error is overruled.

■ In ground of error No. 5, it is urged that Dr. Mason's testimony failed to prove beyond a reasonable doubt that a conclusive test was made in determining that the substance in the capsule allegedly possessed by appellant was heroin for the reason that, except for one test, the remainder of his testimony is based on hearsay.

To support his position, the appellant points out that the testimony of Dr. Mason that the substance in the capsule was heroin is based on the fact that he personally conducted one test, which he stated was not conclusive, and that the remainder of his testimony was based on records of tests made by employees in the laboratory.

Dr. Mason, a chemist, testified that six or seven different tests were made of the substance contained in the capsule to determine if it was heroin. He further testified that he was in charge of the laboratory, that he made one of the chemical tests, and that the other tests were made by employees who worked under his direction, supervision and control in the laboratory; and that he subsequently examined the records and ascertained that the analysis had been performed correctly.

In Kent v. State, 374 S.W.2d 671, this Court said:

"A chemist under whose supervision laboratory analysis of certain specimens are made, by another chemist in said laboratory, may testify from records of the laboratory as to the results thereof. Bryan v. State, 157 Tex.Cr.R. 592, 252 S.W.2d 184; Jackson v. State, 159

Tex.Cr.R. 228, 262 S.W.2d 499; Leonard v. State, 161 Tex.Cr.R. 470, 278 S.W.2d 313; McCray v. State, Tex.Cr.App., 365 S.W.2d 9; Meadowes v. State, Tex.Cr. App., 368 S.W.2d 203." See also: Dagley v. State, Tex.Cr.App., 394 S.W.2d 179; Clifton v. State, Tex.Cr.App., 399 S.W.2d 353; Preston v. State, Tex.Cr. App., 450 S.W.2d 643.

The fifth ground of error is overruled.

■ The appellant urges error on the ground that the sole purpose of the prosecutor in cross-examining the defense witness, Paul Majors, was to prejudice the jury and deny appellant his fair trial rights, and the court's instruction to disregard it could not cure its prejudicial and inflammatory effect on the jury.

The cross-examination was as follows:

"By State's Attorney:

"Q  You say you are just a user?

"A  Yes, sir, that's right.

"Q  Of heroin?

"A  That's right.

"Q  Not a dealer?

"A  Not a dealer.

"Q  Majors, as a matter of fact, you were one of the major heroin dealers in this part of the country before you got busted, weren't you?

"A  No, sir.

"Appellant's Attorney: Your Honor, I am going to object to this—

"The Court: Sustain that.

"Appellant's Attorney: I request the jury be instructed to disregard that.

"The Court: Disregard it."

Appellant's motion for a mistrial was overruled.

The witness Majors was one of seven persons in the apartment of Huey Luster when the officers entered. The state's testimony was that Majors was in the hallway by the bathroom when the officers entered and Majors ran into the bathroom. Majors testified he was in the bathroom giving himself an injection of heroin, and he had ten capsules of heroin on the toilet seat. Majors further testified that he had been convicted on a plea of guilty for the possession of heroin at the time and place charged in this case, and that appellant did not possess any narcotics at this time. Majors further testified that he had been convicted for forging a prescription for narcotics and for armed robbery.

The appellant did not object to the court's failure to limit the consideration of his prior convictions to his credibility as a witness and made no request therefor.

In considering the record as presented, it is concluded that no error is shown.

■ The appellant urges error on the ground that the officers forced the front door of the apartment open without announcing their presence and purpose, never presented or exhibited a search warrant, and that the search was illegal for the reason that the officers made a general search of the entire premises.

In the absence of the jury, the court heard evidence on whether the search had been properly conducted and the search warrant was properly executed and overruled the appellant's objections. Thus, it held that the search was properly executed.

Officer Hemby testified that after the magistrate delivered him the search warrant he notified Officers Cavender, Hendry and Goodson, who met him at a designated location and about 12:20 p. m., they went to the place described in the warrant to execute it. Hemby approached the door of the apartment first, heard a lot of loud talking, hollered "Police" as he knocked heavily on the door three times, and the door which appeared to be closed came open. When the door came open Hemby could see persons sitting on the divan and

standing in the living room near the hallway that leads to the bathroom. From the front door Hemby saw Paul Majors with a tie-off rag around his arm and a needle in his arm. Majors ran down the hall with Hemby running after him. As Majors got in the bathroom, he dropped a large cellophane wrapper from his left hand to the bathroom floor which was later found to contain seven capsules. There was a commode in the bathroom. After Hemby entered the bathroom, he saw the appellant standing in the left corner. When Hemby told appellant to "Hold it," appellant raised his hands straight up, dropping a capsule from one hand to the floor. The appellant had a tie-off rag and also several scars which appeared to be needle marks on his left arm, some of the marks were old and some were new. When Hemby went through the front door, he saw Bert Colbert on the couch in the living room and Huey Luster coming from a bedroom at the rear of the hall. The capsules the appellant and Majors dropped were of the same type.

The testimony of the three officers who accompanied Officer Hemby in executing the warrant is in accord with the testimony of Hemby.

The testimony of the state reveals from an analysis of the substance contained in the seven capsules dropped by Majors, the one dropped by appellant, the one that Colbert had, and the capsule found under the powder box on the dresser it was determined that the substances were heroin.

The appellant offered as evidence of the officers' entry into the apartment the testimony of Paul Majors, Constance Luster, Harold Johnson, Bert Colbert, and Ronald Cooksey, who were all present in the apartment at the time of the search. None of these witnesses affirmatively testified that the officers did not give notice of the search, but some stated that they did not hear or see any notice given. There is no testimony that a search warrant was or was not exhibited to Huey Luster, the only person named in the warrant as the person in control of the premises, or to any person in the apartment. Neither Huey Luster nor the appellant testified at the trial.

The testimony reveals that Luster was at the door of or in a rear bedroom when the officers entered the apartment. There was no testimony that the officers abused or disarranged anything in the apartment during the execution of the warrant.

Whether the search warrant was unreasonably executed in the entry and search of the apartment and the capsules illegally obtained as a result of the search depends upon the evidence. The evidence raises an issue of fact as to whether the officers gave notice of their presence, that they were officers and of their purpose for being there.

There was no objection to the failure of the court to instruct or a request to instruct the jury in accordance with the provisions of Art. 38.23, Vernon's Ann. C.C.P., that if they believed that the officers did not announce their presence and purpose before entering the apartment that the evidence would be in violation of said statute and to disregard the evidence and not consider it for any purpose. Barnett v. State, Tex.Cr.App., 447 S.W.2d 684.

The search by the officers was confined to the apartment described in the search warrant. Such a search as to area was authorized and valid. 51 Tex.Jur.2d 710, Sec. 32.

The judgment is affirmed.