**Arthur McELWEE, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45846.**

Court of Criminal Appeals of Texas.

March 21, 1973.

Rehearing Denied May 16, 1973.

Laird Palmer, Austin, for appellant.

Robert O. Smith, Dist. Atty., Michael J. McCormick, Asst. Dist. Atty., Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is a companion case to Dickson v. State, Tex.Cr.App., 492 S.W.2d 268 (1973).

This appeal is from a conviction of robbery with firearms; the punishment was assessed at three hundred (300) years.

Charles Henderson testified that he was manager of the Stop 'N Go Market at 2001 East Nineteenth Street, Austin. At about 7:20 A.M. on January 23, 1971, while he was alone in the store, a man opened the front door, looked in, and then left. In about two minutes five men, including the

one who had earlier looked in, came in the store and went up to the counter. Three, including appellant, lined up in front of Henderson with the other two a little to the rear of these three. Appellant asked for a package of Kools, and as Henderson turned around to get the cigarettes from a shelf, and about two seconds later before he could reach them, he was shot in the back of his left shoulder. He was immediately shot two more times, once in the right arm and the third time in the stomach. He then fell to the floor, "playing dead" as he said, and was shot again while lying down. He heard someone say, "let's get it," and heard the cash register open and coins being removed. He had just placed a bag of money in the drawer. After things had quieted down, he got up and looked for his gun. It was missing, as was also the money bag he had put in the drawer. He notified the police by phone, turned on the burglar alarm, and then drove to a hospital, reaching it about 7:35 A.M. There he talked to Police Officer Blackmore, and gave him a description of the robbers. He definitely identified appellant as the one who inquired for the Kool cigarettes, and though he did not see who shot him, having his back turned to them at the time, stated that it was most likely that one of the three directly in front of him when the appellant asked for the Kools was the one who shot, and that appellant was the one directly in front of him.

Nolan Cobb, district representative of Stop 'N Go Markets, testified that on that same morning he took an audit of the store's receipts, and found that the store had lost one hundred thirty-one dollars.

Police Officer Hickey testified that about 8:00 A.M. on January 23, 1971, while on patrol duty in his police car, he received a radio report of the robbery. He pro-ceeded to the area, and when about seven or eight blocks from the store he saw three men walking. When he got about forty yards from them they started running and he lost sight of them. He recognized one as a man he knew as Casey Lee Battles, and one he identified as the appellant, Arthur McElwee, Jr. Shortly thereafter, when he reached 2106-A Pennsylvania Street, where the residence of Herman Richardson was located, he saw appellant and another in custody of police. Hickey stopped, went to the residence of Richardson and asked if he could come in, and he was given permission by Richardson to enter. He saw Officer Dannheim take a pistol from a dresser. He found a blue cloth-like money bag containing one hundred ten dollars and seventy cents.

Hickey also found and took two pieces of paper containing five names and some rules. These five men listed on this paper were later identified by Henderson as the men who came in his store on this occasion. These papers were admitted in evidence as State's exhibits numbers 2 and 3.

Police Officer Dannheim testified that at about 7:45 A.M. he received radio notice of the robbery. He went to the home of Herman Richardson at 2106-A Pennsylvania, and was given permission by Richardson[1] to enter. He found and arrested appellant and Williams in the sitting room. He also found a .22 pistol lying in clear view on a dresser.

Fred Rymer, a ballistic expert with the Texas Department of Public Safety testified that he made test firings of the .22 pistol found at Richardson's, and compared them with a bullet removed from Henderson's body. In his opinion, the bullet was fired from that .22 pistol. Proper chain of custody of the bullet and gun was stipulated.

1. Richardson's home was a one room combination sitting room, bedroom, and kitchen, of the efficiency apartment type. In the pretrial hearing of a motion to quash, the evidence showed that the officers had been directed to this home by pedestrians on the street who told them that two men running from the police had run inside.

The appellant did not testify, and offered no evidence.

The court charged on the law of principals.

The evidence is sufficient to support the conviction.

■ Appellant assigns as a ground of error the failure of the court to charge on circumstantial evidence. Appellant was positively identified by the prosecuting witness as being the one who asked him for the cigarettes, causing him to turn around about two seconds before the first shot. He placed appellant as directly in front of him when the request was made, and closest to him. There was direct evidence that appellant was connected as a principal in the robbery. The court did not err in failing to charge on circumstantial evidence. Turner v. State, Tex.Cr.App., 462 S.W.2d 9; Eason v. State, Tex.Cr.App., 423 S.W.2d 315; De La O v. State, Tex.Cr.App., 373 S.W.2d 501.

■ Appellant's third, fourth and tenth grounds of error complain of the in-court identification of appellant by the witness Henderson. He contends that such identification was the product of an illegal line-up because appellant was not represented by counsel at the line-up, and that the line-up was unduly suggestive and prejudicial.

We have carefully read the statement of facts and have found no evidence of appellant ever having been in a line-up or having been identified as the result of a line-up. At a pretrial hearing involving all of the five defendants charged with the offense,[2] it was shown that in a line-up, two of the others allegedly taking part in the robbery were identified by Henderson. However, the record does not disclose that appellant was included in this or any other line-up, or that he was identified as the result of a line-up.

However, it is clear from the record that Henderson's identification of appellant was based solely on his observation of him on January 23, 1971 in the Stop 'N Go store, and not in any way dependent on any line-up.

Appellant's grounds of error three, four and ten are overruled. Turner v. State, supra.

■ Appellant's fifth ground claims error in allowing the State to bring in the courtroom for identification purposes, while the witness Henderson was testifying, the four co-defendants of appellant. This contention has been decided adversely to appellant in Jones v. State, 171 Tex.Cr.R. 608, 352 S.W.2d 270, and in Sanders v. State, Tex.Cr.App., 462 S.W.2d 3, and is overruled.

■ In his eighth ground of error, appellant says that State's exhibits 2 and 3 were improperly admitted in evidence over his objections that they were not shown to be authentic or relevant, that the proper predicate was not laid, and that a proper chain of custody was not shown.

The initials written at the top of exhibit 2 matched the names which appear on exhibit 3, which are the names, or nicknames of the five men later identified by Henderson as the robbers. Exhibit 2 also contains a set of "RULES" as follows:

"(1) No unnecessary Money Spending

"(2) Two Stones Kill Five ducks.

"(3) All Bullshit Must be terminated.

"(4) Friday/Saturday/Tuesday

"(5) No Flaking out For No Reason."

These pieces of paper were found in the room where appellant and one of his confederates had fled to avoid the police within less than an hour after the robbery. They were found in the same room where

2. The indictment charges the five persons identified by Henderson with the robbery. Appellant's case was severed, and he alone was on trial.

the gun shown to have been used in the robbery was found, and at the same residence where the stolen money bag was located. The papers, exhibits 2 and 3, were admissible to connect all of the parties with the offense, and as evidence of a conspiracy.

"Where two or more people take part in the commission of a felony, evidence of the conspiracy is admissible even though the substantive crime of conspiracy is not charged in the indictment." Phelps v. State, Tex.Cr.App., 462 S.W.2d 310, 311.

 As to proper chain of custody, this was stipulated on the trial by appellant. In addition, Officer Hickey identified the pieces of paper as being found by him when appellant was arrested.

Appellant contends error in his ninth ground in the action of the court in overruling his motion for mistrial based on inflammatory and prejudicial remarks of the witness Henderson. We have carefully reviewed the testimony of this witness, and find no improper expressions or remarks of his permitted to go to the jury of such a nature as to constitute reversible error.

Appellant's final ground of error complains of the court's refusal to give his instructed charge on probable cause for the search of Richardson's house. Appellant relies on Article 38.23, Vernon's Ann.C.C.P., which reads:

"In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or had a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

Article 38.23, V.A.C.C.P., is applicable only when an issue of fact is created by the evidence of probable cause. Green v. State, Tex.Cr.App., 451 S.W.2d 893. But when, as in the present case, there is no evidence which raises a fact issue, the court may find probable cause as a matter of law. Corbitt v. State, Tex.Cr.App., 445 S.W.2d 184; Barnett v. State, Tex.Cr.App., 447 S.W.2d 684; Jones v. State, Tex.Cr.App., 458 S.W.2d 654; Chaires v. State, Tex.Cr.App., 480 S.W.2d 196.

The court properly refused the requested charge.

The judgment is affirmed.

Opinion approved by the Court.