Albino L. ALBA, Appellant,
No. 44,886

v.

The STATE of Texas, Appellee.

Henry BEDELL, Appellant,
No. 44,887

v.

The STATE of Texas, Appellee.

Nos. 44886, 44887.

Court of Criminal Appeals of Texas.

March 7, 1973.

Rehearing Denied April 25, 1973.

Wallace Shropshire, Austin, for appellants.

Robert O. Smith, Dist. Atty., Michael J. McCormick, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty. and Robert A Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The original appeals by these appellants were abated in per curiam opinions for failure to comply with Article 40.09, Vernon's Ann.C.C.P. Those deficiencies have now been corrected and the appeals are reinstated.

These appeals arise out of convictions for possession of heroin wherein the punishment, enhanced under Article 62, Vernon's Ann.P.C., was assessed in the joint trial at life for each appellant.

 At the outset we are confronted with appellant Bedell's contention that a void prior federal conviction was used to enhance his punishment. The indictment alleged appellant had been previously convicted in 1959 of the federal offense of conspiring to knowingly and willingly acquire marihuana without having paid the transfer tax imposed thereon by 26 U.S.C. § 4741(a)(2) in violation of 26 U.S.C. § 4744(a)(1). He contends that this conviction which was used for enhancement was constitutionally invalid in light of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held that the Fifth Amendment privilege against self-incrimination is a complete defense to a prosecution for a violation of 26 U.S.C. § 4744(a).

Appellant Bedell claims that *Leary* should be applied retroactively and that his 1959 guilty plea to the federal charge involved would not constitute a waiver of his privilege against self-incrimination. This identical question was presented in Ex parte Taylor, 484 S.W.2d 748 (Tex.Cr. App.1972), and decided favorably to appellant's contention.

Without reciting all of the authorities and reasoning in *Taylor,* we find that appellant Bedell's conviction under Article 62, supra, cannot stand. The judgment as to him is reversed and the cause remanded.

Turning to appellant Alba's grounds, we determine that a discussion of the facts becomes necessary.

The evidence reflects that on February 18, 1971, Captain Harvey Gann of the Austin Police Department received information from an informant that the appellants were keeping a large "stash" of heroin at Jones Cemetery, east of Austin; and that sales were being made out of the cemetery. Various members of the Austin Police Department were assigned to conduct a surveillance of this area on February 19, 1971.

On February 20, Officer Wilbur Phillips of the Austin Police Department discovered two instant coffee jars filled with "fingerstalls" containing alleged heroin buried at the cemetery.[1] He conducted a field test, using a Marquis reagent, to determine that the powdery substance in the fingerstalls was in fact an opiate. He reburied the jars and the surveillance continued.

On February 20 and 21, neither of the appellants was seen in the area under surveillance.

---

1. These two jars were introduced into evidence as State's Exhibit 14. Later testimony revealed that these two jars did contain heroin. One jar contained 36.6 grams of 43.1 per cent heroin; and the other jar contained 25.0 grams of 45 per cent heroin. Each jar contained 49 and 48, respectively, fingerstalls. The testimony revealed that a fingerstall is a piece of rubber which is about the size of the end of the thumb and has a knot tied in the end of it. Inside of each fingerstall was approximately ⅔ gram of heroin wrapped in small pieces of ruled notebook paper.

In the afternoon of February 22, the appellants were seen driving north on the Jones Cemetery Road. Before they reached the cemetery, the automobile stopped and appellant Alba got out of the passenger side of the car and disappeared into the brush. Appellant Bedell, who was driving, got out and stood at the front of the automobile until Alba returned a few minutes later. Both appellants got back in the automobile and left.

Neither of the appellants was seen in this area on February 23.

On the morning of February 24, 1971, the appellants were again seen driving north on the Jones Cemetery Road. Appellant Alba was driving the vehicle and appellant Bedell was a passenger. The appellants stopped at the end of the road near the cemetery. After appellants got out and walked past the front end of the car they disappeared from the sight of the surveilling officers for a period of 15 to 20 minutes. Appellants returned to their automobile and began driving south on Jones Cemetery Road. They stopped their car again and appellant Bedell got out carrying an unidentifiable object in a red rag. Appellant Bedell walked to a place off of the road, "knelt down and dug a hole and buried whatever it was; stood back up, pitched some more debris on top of it, turned around, walked back to the car wiping his hands with the red rag." Appellants proceeded down the road where they were intercepted by police officers.

As the officers approached the car, appellant Bedell was observed swallowing some of the rubber fingerstalls. A subsequent search of the vehicle revealed an empty glass jar, a piece of colored tinfoil (State's Exhibit 12) and one fingerstall (State's Exhibit 13) containing approximately ⅔ gram of 50.9 per cent heroin on the center portion of the front seat of the car.

Following the arrest, officers noted that appellant Alba was wearing shoes which had horizontal lines across the soles. The officers proceeded to the location at the end of Jones Cemetery Road where the appellants had first stopped their vehicle. A set of footprints,[2] bearing these horizontal lines, were followed from where the automobile stopped into a fenced portion of the cemetery where the officers found a brown instant coffee jar buried (State's Exhibit 9). Inside of the jar were two syringes and hypodermic needles which were found not to contain any trace of narcotics. There was also one fingerstall containing .59 grams of 41.5 per cent heroin inside of the jar. The heroin inside of this fingerstall was wrapped in small pieces of ruled notebook paper as in the other State's exhibits.

The officer, who viewed appellant Bedell bury some object in a red rag, returned to his vantage point and directed other officers to the spot where the alleged burying took place. At this location officers uncovered[3] another instant coffee jar of heroin (State's Exhibit 6). Inside of this jar there were 49 fingerstalls of 43.6 per cent heroin weighing a total of 35.2 grams. The heroin inside of these fingerstalls was also wrapped in small pieces of ruled notebook paper.

Various tests[4] were run on the different State's exhibits in determining that the substance contained in the jars was heroin. The percentage of heroin in the substance as well as the gross weight was determined. An additional test, known as an

---

2. The officers testified that a rain the previous night had obliterated all other prints.

3. There was testimony to the effect that all of the jars recovered in State's Exhibits 6, 9 and 14 were similarly buried; i. e., there was a rock on top of the ground and underneath there was some soil, and then there was another rock under which the jars were located.

4. The Department of Public Safety also made tests for latent fingerprints on these State's exhibits, but none were discovered.

infrared spectrophotometric analysis, was run on samples from State's Exhibits 6 and 14. This test revealed the molecular structure of the substance tested. A Department of Public Safety Chemist, Jim Burris, compared the results of this test on each of the samples and testified that the heroin contained therein was "all of the same origin, or from a common batch." [5]

In their first ground of error the appellants contend that the State failed to comply with a discovery order issued by the trial court. Appellants' motion for discovery under Article 39.14, Vernon's Ann.C.C.P., which was granted, required, among other things, the disclosure of "[a]ll laboratory, fingerprint and/or other scientific reports found in or on any article or thing believed to have been involved in the offense alleged in the indictment."

The written report, which appellant Alba contends was not disclosed to him, as per the discovery order, concerned the results of an infrared spectrophotometric analysis of the substance contained in State's Exhibits 6 and 14.

▊ First, it is observed that the portion of the motion for discovery in question is overly broad and that the court would not have erred in refusing the same.

▊ Further, an analysis report of narcotics is the work product of the prosecution, Feehery v. State, 480 S.W.2d 649 (Tex.Cr.App.1972), and is excepted from discovery by the provisions of Article 39.-14, supra.

▊ State witness Chemist Burris testified the exhibits in question contained heroin and that he also had made an infrared spectrophotometric analysis of such substances. At this point on voir dire examination it was established that he had a written report containing such analysis and furnished the same to the prosecuting attorney. Then appellants' counsel moved to exclude any further testimony concerning such analysis for failure to comply with the discovery order. The prosecutor clarified the testimony to reflect that the written report or a copy thereof had been forwarded to the submitting officer and that as a matter of procedure such reports were not always forwarded to the prosecuting attorney. The prosecutor then stated he did not have such report in his possession and had furnished defense counsel with a report of the chemical analysis of the substances in question.

The motion to exclude the testimony was overruled. No apparent effort was made by the defense or prosecution to determine if the witness had with him the original report, or a copy, or could obtain one. The report was thus not used for cross examination or possible impeachment. The report was not made a part of this record, and we are unable to determine how the appellant was harmed, if he was, by the court's action.

While the prosecutor may not rely solely upon the fact that he did not have personal knowledge of such report which may be in possession of other state agencies, cf. Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964), we cannot agree, under the circumstances of the instant case, that there was such a violation of the discovery statute entered or a suppression of evidence favorable to the appellants or material to the defense so as to call for reversal.

Appellant Alba complains that the court erred in admitting, as res gestae, State's Exhibit 14 and Officer Phillips' testimony concerning its discovery and identification.

---

5. Chemist Burris also testified that in comparing these two exhibits (6 and 14), he found that all of the fingerstalls appeared to be similar and that each one was "tied up" in the same manner. Each fingerstall contained approximately ⅔ gram of heroin; and the heroin in each fingerstall was similarly wrapped in ruled notebook paper.

State's Exhibit 14 had been discovered two days prior to appellants' arrest. None of the surveilling officers had seen either of the appellants in the exact location [6] where State's Exhibit 14 was buried; nor had they seen Exhibit 14 in the physical possession of the appellants. Appellant Alba further complains that the heroin contained in Exhibit 14 comprised approximately ⅔ of the total amount of heroin discovered and that the introduction into evidence of this large quantity of heroin allowed the prosecution to infer that the appellants were heroin suppliers and dealers, thus prejudicing the jury.

In Miller v. State, 469 S.W.2d 180, 181 (Tex.Cr.App.1971), this court held:

"In a prosecution for possession of illegal drugs or narcotics, other illegal drugs or narcotics found at the same time and place are admissible, as they are part of the res gestae of the offense. Beeler v. State, Tex.Cr.App., 374 S.W.2d 237, cert. denied; 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 51."

■ The surveillance, which was begun on an informer's tip, was conducted for a period of 5 days and terminated with the arrest of these appellants. When Exhibit 14 was discovered, it was tested and reburied exactly as the officer had found it. The surveilling team did not want to disturb the narcotics for fear of arousing the suspicions of the possessors. This entire vigil is to be considered as one continuous event. Thus, the discovery of State's Exhibit 14 in the vicinity of the cemetery two days prior to appellants' arrest meets the requirement of being "found at the same time and place" as set forth by *Miller*.

■ Before we can conclude that State's Exhibit 14 was admissible into evidence, we must determine whether these two instant coffee jars of heroin were in the "possession" of these appellants. Possession has been defined by this court on numerous occasions as the "actual control, care and management of the narcotic drug." Cuellar v. State, 169 Tex.Cr.R. 604, 336 S.W.2d 159 (1960); Collini v. State, 487 S.W.2d 132 (Tex.Cr.App.1972), and cases there cited.

■ In some cases, as in the one at bar, possession must be proved by the introduction of circumstantial evidence. Such evidence must affirmatively link the person accused to the narcotic which he allegedly possessed. Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1972). This affirmative link is established by showing additional independent facts and circumstances which indicate the accused's knowledge and control of the narcotic. Collini v. State, supra.

The evidence presented shows that there were additional independent facts and circumstances affirmatively linking the appellants to the heroin contained in State's Exhibit 14.

The heroin in State's Exhibits 6, 9, and 14 was located inside instant coffee jars; and these jars were all buried in the same manner. Each fingerstall in these exhibits contained approximately ⅔ gram of heroin. Samples of the heroin from each exhibit showed that the percentage of pure heroin was similar. All of the rubber fingerstalls were similar in appearance and were tied in the same manner. The heroin inside of each fingerstall was wrapped in small pieces of ruled notebook paper.

In addition, the spectrophotometric analysis of State's Exhibits 6 and 14 revealed that the molecular structure of these two exhibits was identical; indicating that they came from the same origin.

■ We find that the heroin in State's Exhibit 14 was properly admitted into the

---

6. The testimony never revealed exactly how far away State's Exhibit 14 was buried from the other burial sites.

evidence of this case as part of the res gestae of the offense; and that the evidence was sufficient to show possession by the appellants.

 This large quantity of heroin introduced into evidence supported inferences that the appellants were heroin suppliers and dealers. Captain Gann testified that the informant related to him that the appellants had a "large stash" of heroin at the cemetery and that they were making sales from that location. The introduction of State's Exhibit 14 was "harmful [to the appellants] in the sense that all evidence tending to show guilt is harmful." Smith v. State, 474 S.W.2d 486 (Tex.Cr.App. 1971); Archer v. State, 474 S.W.2d 484 (Tex.Cr.App.1971).

Lastly, it is contended that the trial judge's answer to the jury's written request constituted reversible error. After retiring to deliberate at the penalty stage of the trial, the jury sent a written note asking that Article 62, supra, be furnished or read to them. The trial court sent to the jury the following written note: "I am checking the law to see if Article 62 may be given to you." The jury was not brought into open court nor were the appellants and their counsel notified of the communication. However, no further communication was had prior to the receipt of the verdict.

While it is clear that the court did not comply with the provisions of Article 36.-27, Vernon's Ann.C.C.P., which trial judges are admonished to do, the communication did not amount to additional instructions and does not, under the facts, constitute reversible error. Allaben v. State, 418 S.W.2d 517 (Tex.Cr.App.1967).

The judgment as to the appellant Alba is affirmed and the judgment as to appellant Bedell is reversed and that cause remanded.