S.W.2d 129, 134 (Tex.Cr.App.1979); *Gonzales v. State*, 505 S.W.2d 819, 820 (Tex.Cr.App.1974). Under all of the evidence, then, the jury was entitled to conclude there was no reasonable hypothesis other than appellant's guilt.

Amado GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–83–083 CR.

Court of Appeals of Texas, Beaumont.

May 16, 1984.

Roy E. Greenwood, Austin, for appellant.

William L. Schroeder, New Braunfels, for appellee.

OPINION

BROOKSHIRE, Justice.

Appellant was charged by indictment with possession of cocaine under TEX. REV.CIV.STAT.ANN. *Art. 4476–15, Sec.*

*4.04* (Vernon 1976); the offense was said to have occurred on February 9, 1980. After pleading not guilty, a jury found Appellant guilty. Thereafter, the punishment was set by the Court at four years confinement.

On September 1, 1982, by the Court of Criminal Appeals, pursuant to the provisions of Senate Bill 265, 67th Legislature, Regular Sess., 1981, this appeal was transferred to the Court of Appeals, Third Supreme Judicial District in Austin. By order of May 4, 1983, this appeal was retransferred to this Court by the Supreme Court of Texas. This case was set for argument on February 27, 1984, in Austin.

The trial in this case was a consolidated proceeding wherein two appellants, Amado Gonzales and Eugene Galindo, Jr., had been charged with the same offense, possession of cocaine.

The State, through a chemist, offered evidence that a dinner plate and a razor blade that had been obtained from the New Braunfels Police Department were chemically analyzed. A "very small amount of cocaine" residue was found on the plate. The small amount of cocaine was, by analysis, shown to be approximately 114 micrograms or about 10% of a milligram. A witness proffered by the State said he had received information from a reliable and credible informant to the effect that the informant had been in the residence of Amado Gonzales within the previous 48 hours and the informant had stated that the Appellant, Gonzales, possessed a quantity of marihuana. Apparently this informant had given information on about 10 prior occasions which information had previously been proved to be accurate and correct. Later that evening a search warrant was obtained from a justice of the peace for the search of the Gonzales' home. The witness then related that he and some other officers went to the Gonzales' home at 1731 Lee Street in New Braunfels, during the evening hours, and executed the search warrant. They announced that they were the police and then broke down the front door to enter the premises. Eugene Galindo, Jr., was in the living room along with two women and several small children. At about this time, a bathroom commode was heard flushing and an Officer Murphy proceeded to the bathroom, finding it locked. He stated that he heard the commode flush again. Thereafter, the bathroom door was forced open. Appellant, Gonzales, was found in the bathroom with the witnesses noticing marihuana seeds and marihuana floating on top of the commode water—"still swirling". An officer testified that marihuana seeds and residue were retrieved and Gonzales placed under arrest. Then apparently the authorities moved all the adults and children into the living room and began a search of the premises. A Texas Ranger, Martinez, said he found some suspicious items in the kitchen, having found therein a plate and a razor blade. A white powdery residue was on State's Exhibit No. 5, being the kitchen plate. It was said that the pattern of the plate found in the kitchen did not match any other pottery or dishes in the house. Martinez said he found no one in the house to be under the influence of any intoxicating substance and that he never saw anyone in the actual kitchen where State's Exhibits Nos. 5 and 6 (plate and razor blade) were found.

A police officer, James W. Buntyn, testified that he took into custody the various State's exhibits, placed them in a paper sack or container and hand-delivered all these exhibits to the Bexar County Laboratory. Police Officer Buntyn further testified that, during his presence in the home, Galindo was in the living room when the officers entered the premises and that the only person who made any outcry or created any problem or trouble or failed to cooperate was one female witness known as Rosa; that neither Galindo nor Gonzales was intoxicated or appeared to be intoxicated but that the said Rosa appeared to be under the influence of something. Eugene Galindo stated that he was merely temporarily staying with his common-law wife, Rosa Bennett and her brother, at 1731 Lee Street, in New Braunfels. He testified that he was in the living room of the premises when the officers broke in and was

immediately placed under arrest. Galindo said further that the entire family had just returned from an outing when the officers broke in. Galindo said he did not know to whom the crucial plate belonged. Rosa Bennett, the alleged common-law wife, testified that she did not see State's Exhibit No. 5—the critical and damning plate—earlier in the day at the house and had no knowledge of there being any drugs in the house. Our Appellant, Gonzales, testified that when the officers broke into his home, he was actually in the bathroom smoking a marihuana cigarette and when he heard the officers break in he tried to flush the cigarette down the commode. He vehemently denied either possession or knowledge of any cocaine and further testified that he had never seen State's Exhibit No. 5, the incriminating plate, prior to the time of the search.

In the able brief filed by the State of Texas, there is a paragraph that the facts as set forth in the Appellant's brief are essentially correct but needed to be augmented in the following particulars:

1. That Appellant, Gonzales, admitted that where the officers found the plate with the small amount of cocaine would have been in plain view from the living room and Gonzales further admitted being in possession of the premises and also being in possession of marihuana.

2. That Ramiro Martinez testified that the plate with the cocaine residue and the razor blade found thereon can be utilized to "cut" cocaine.

The first ground of error, ably argued and presented, is that the evidence is insufficient to support the jury's verdict that Appellant, Gonzales, was guilty of the knowing and intentional possession of cocaine.

The appellant vigorously urges and emphasizes that there is no affirmative link in this record connecting Gonzales with the knowing and intentional possession of the contraband cocaine.

Appellant forcefully discusses several factual points, such as Gonzales made no incriminating admissions nor made any confession. He testified and denied knowledge or possession which denial Appellant says was not impeached; further, that no accomplice, witness, or accomplice's testimony was brought forward; that no testimony or evidence of direct possession is in the record and that Gonzales was in the bathroom of the house and was not in *close proximity to the kitchen* or in the kitchen area where the contraband was located; that Gonzales was not under the influence of any intoxicants; that there were no needle marks or other incriminating marks or evidences on the body of Gonzales; that there was no fingerprint evidence rebutting forcibly, according to Appellant's contentions, the State's case. On State's Exhibits Nos. 5 and 6 (the plate and razor blade, respectively) there was no fingerprint analysis done. Hence, the State failed to show that Gonzales had ever touched, handled or grasped these exhibits; that the amount of the contraband cocaine was approximately 1,000ths of an average aspirin tablet (actually .000004 of an ounce); that the State failed to show exclusive possession of the premises by Gonzales—but this is not necessary under the substantive law—and, lastly, the failure to show any "furtive gestures" by Gonzales.

After Gonzales was arrested he was cooperative, making no trouble, committing no assaults, attempting no flights or escapes. Appellant sums up his position by saying that he could not be convicted of possession of a controlled substance because there is a total lack of a direct, affirmative link showing his knowledgeable possession of the cocaine and that this appellant was never in a "close juxtaposition" to the contraband. It is urged, too, that any amount of marihuana recovered was so small as to be negligible—at most a misdemeanor. Also the bathroom area was nowhere near the damning plate and razor blade in the kitchen area.

The State seems to rely rather heavily on the idea that the possession of the contraband need not be shown to be exclusive and that the evidence in this case shows that the accused jointly possessed the contra-

band with another. The State relies on Detective Roque's testimony, that, at the time he went to Appellant's house and knocked, scurrying and people moving about could be heard from inside the house. Those clearly could have been people other than the Appellant, Gonzales. Detective Roque observed that it was Eugene Galindo coming from the kitchen, not Gonzales. Furthermore, the detective said the plate, which contained the contraband, and the razor blade were in plain view from the living room, but apparently the cocaine, itself, was not in plain view from the living room to visit notice upon Gonzales.

This is a very difficult case. Frankly it is a weak case. The evidence of possession, being the care, control, management and dominion over the narcotic drug, exclusive or joint, is simply not demonstrated. The culpable knowledge *on the part of Gonzales* that the *powdery fine film was cocaine* is lacking. The circumstantial evidence does not show an affirmative link that has to be established by additional and independent facts and circumstances that indicate the accused's knowledge and control of the narcotic. *Alba v. State,* 492 S.W.2d 555 (Tex.Crim.App.1973).

After a careful review and analysis of the entire record in this case we have reached the conclusion that our unusual fact situation is governed and controlled by *Rhyne v. State,* 620 S.W.2d 599 (Tex.Crim. App.1981). In *Rhyne* it was held that in order to establish the unlawful possession of a controlled substance that the State must *prove* that the accused exercised *care, control* and *management* over the contraband and that the accused knew the matter possessed was contraband. It was also held that when the record lucidly and transparently demonstrates that the accused was not in exclusive possession of the place where the contraband was found, an Appellate Court cannot conclude that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which forge an affirmative link between the accused and the contraband; that showing the presence of the accused at the scene of the offense does not make the accused an actual participating party to joint possession of the controlled substance. Further, that the accused had rented the premises upon which the contraband was found, if also occupied by others, is not usually sufficient in and of itself to justify a finding of joint possession; that where a conviction is based upon circumstantial evidence that evidence must exclude every other reasonable hypothesis except that of the accused's guilt. Therefore, proof that amounts only to a very strong suspicion or a strong probability is insufficient. We quote from *Rhyne v. State, supra:*

> "The issue in this appeal is whether the State established such independent facts and circumstances to affirmatively link appellant to the heroin. ... [T]he evidence shows: (1) appellant was in the house at the time of the search but was not found to be in personal possession of narcotics; (2) appellant was not in exclusive possession of the premises because two other persons lived there; (3) appellant, as seated in the living room was not in close proximity to the heroin found concealed under a shingle on the exterior of the house; (4) appellant, prior to the search, had been a passive observer to another occupant's action in selling narcotics at the house; (5) appellant had leased the house and stayed there two nights a week."

Of course our facts differ, but in *Rhyne* even when the defendant there had been an *actual but passive observer* to another occupant of the house *selling narcotics at the house* and that the appellant had leased the house and stayed there were held not to be sufficient to create the necessary affirmative link which had to be established by independent facts. Upon an analysis of our record we think that the *Rhyne* case was a stronger set of facts from the standpoint of the State; nevertheless, the Court of Criminal Appeals without dissent speaking through Judge Tom G. Davis held the evidence was insufficient to support Rhyne's conviction.

The evidence being insufficient, the State is precluded from further prosecution of the case. *Morr v. State*, 587 S.W.2d 711 (Tex.Crim.App.1979); *Heltcel v. State*, 583 S.W.2d 791 (Tex.Crim.App.1979).

Judge Davis reversed the judgment of the case and reformed the judgment to show an acquittal. We quote further from the *Rhyne* case at page 601:

"Appellant was not shown to have *exercised any control over the heroin* which was recovered outside the house. There *were no furtive gestures by appellant* and *he was not shown to have been under the influence of narcotics. Appellant did not attempt to escape at the time the warrant was executed.* Finally, the *heroin was not in plain view ...*" (Emphasis ours).

In view of the strikingly similar fact situation and in view of the reasoning, rationale and holding in *Rhyne, supra,* we, being an intermediate appellate court, feel constrained to reverse the judgment and order a dismissal of the cause.