Ronald William **ARNOTT**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 44824.

Court of Criminal Appeals of Texas.

Feb. 28, 1973.

On Rehearing July 17, 1973.

Rehearing Denied Sept. 7, 1973.

Phillip C. Friday, Jr., Sam Houston Clinton, Jr., Austin, for appellant.

Robert O. Smith, Dist. Atty., Phillip A. Nelson, Michael J. McCormick, Asst. Dist. Attys., Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of possession of heroin. The jury assessed punishment at twenty-five (25) years' imprisonment.

Christie Lou Faubian, Arnold Neal, Jr., and Ronald William Arnott, the appellant, were jointly charged as acting together in a three-count indictment for the possession of heroin, marihuana and narcotic paraphernalia. Only the charge for the possession of heroin was submitted to the jury. Christie Lou Faubian and Arnott, the appellant, were tried jointly.[1] Miss Faubian was also convicted, and her case on appeal is reported at Tex.Cr.App., 480 S.W.2d 194.

The main contentions of the appellant are that the evidence is insufficient to support the conviction and that the court erred in admitting into evidence the narcotics and notebooks found as the result of a search under a warrant.

---

1. Neal was tried earlier. His case is not before us.

The record reflects that on September 3, 1970, Miss Faubian, the co-defendant, using the name of Orbitt, made arrangements for the lease of the apartment where the contraband was later found. The next day, the appellant, also using the name of Orbitt, signed a lease for the apartment. Some twelve days later officers of the Austin Police Department went to the apartment where they arrested Neal, Miss Faubian and the appellant and made a search under a search warrant. Capsules of heroin were found on the table where the appellant was seated. Neal, who was apparently asleep, was in another room. The appellant and Miss Faubian had needle marks on their arms, some of which were red, indicating that they were fresh.

The officers testified to finding a large amount of heroin, marihuana, other drugs and narcotic paraphernalia.

It is shown by the testimony of the Department of Public Safety chemist who analyzed the material found in the apartment and submitted to him that State's Exhibit No. 2 found on the table where the appellant and Miss Faubian were seated contained thirty-nine capsules or 1.61 grams of 20.5 percent heroin.

State's Exhibit No. 5 consisted of four balloons which contained a total of 3.69 grams of 20.5 percent heroin. These were found in a closet near where Arnold Neal was found asleep. This would amount to enough heroin to make over 86 capsules, and added with the heroin found at the table, the officers found enough for a total of over 125 capsules of 20.5 percent heroin in the apartment.

In State's Exhibits Nos. 7 and 23, traces of heroin were found in envelopes in the apartment. State's Exhibit No. 14 contained fourteen capsules of lysergic acid diethylamide (LSD).

A small foil package containing opiate was found. The chemist described the opiate as a sort of base for heroin.

Some mescaline was also found in the apartment. Much of the contraband was found in a large duffle bag in a closet in the room where the appellant was arrested. Several other containers of contraband were in the bag. The notebooks in question were also found there.

In what was described as a large army haversack, the officers found 844.87 grams of marihuana. Other marihuana found is set out below:

A paper bag in the duffle bag contained 329.98 grams.

Thirteen "lids" or small bags contained 277.92 grams.

Two smaller bags contained 91.40 grams. Another container had 54 grams.

Two peanut cans found in another closet contained 59.72 grams.

The contents of eleven plastic baggies were 3,635 grams.

Two paper bags contained 665.30 grams. An envelope contained 70 grams.

The chemist testified that the average marihuana cigarette contained .2 of a gram. Based on his testimony, there was enough marihuana found to make more than 29,500 cigarettes.

Also introduced as found in the duffle bag and its containers were apparently a large number of empty plastic capsules. These were described by an officer as being No. 5 capsules, the kind used for heroin and the same kind as found on the table in front of the appellant and Miss Faubian.

One page of State's Exhibit No. 16, a spiral notebook photocopied for the record, bears the date of August 27, 1970. It contains a column headed "Money out." Some of the entries under this column are:

"Sam – Ft. Hood            20.00
 Rooster                   30.00
 Clyde                    100.00
 Dave                     380.00
 ~~Apt. 105~~              ~~10.00~~   [Pd]"

Some of the entries under the other column, designated "Personal debts Money I owe," are:

"Hemphills                 55.00
 Uncle Vans                13.00
                  [Paid]
 ~~Arnold~~                ~~40.00~~"

The next page of Exhibit No. 16 under "money out" shows "~~Bill~~ ~~Earl 4 GRMS~~ [pd]" and directly below that appears "Billy Earl $30.00." as well as other names and amounts.

The next column under "Money I owe" includes: "Arnold 130.00." Further in the spiral notebook, the following page is found:

"Negotiable

| Date + object | | Assets Not Spent | |
|---|---|---|---|
| Aug. 27 | | No. | Cash Value |
| lds. | | 53 | $530.00 |
| Ggs. Hsh | | 26 | 130.00 |
| Money CASH | On Hand | N/A | 57.00 |
| Aug 30 | Sunday | | |
| Ggs Hsh | | 16 | $ 85.00 |
| Cash | | | 150.00 |
| Aug 31st | | | |
| lds | | 47 | $470.00 |
| Cash | | — | 190.00 |
| TK | | 5 | 25.00 |
| Grams Hsh | | 16 | 80.00 |
| As of Sept. 3 | | | |
| Cash | | — | 435.00 |
| lds | | 20 | 200.00 |
| Hsh | | 18 | 90.00" |

Then another page is as follows:

### "ARNOLD'S MONEY

" * * *

|  |  | ith |  |
|---|---|---|---|
| Started ~~Who~~ | | = | 31 |
| | 15 | | |
| Pills left | 13 | = | $65.00 |
| Sold — | 18 | = | $90.00 |
| Chigger owes for 3 pills | | | $15.00 |
| Cash on hand $75.00 | | | |
| Started with 31 | | | |
| Pills left | 4 = | | $ 20.00 |
| Sold | 27 = | | 135.00 |
| Chigger owes | | | $ 15.00 |
| Cash | | | $120.00" |

Another page lists "P²P Methalene."

A following page lists:

| "Sales | | Cash Profits |
|---|---|---|
| Aug. 26 | 2 lds | 40.00 |
| Aug. 28 | 60 lds | 600.00 |
| Aug. 29 | 7 lds | 70.00 |
| Aug. 30 | 7 grms Hsh | 35.00 |
| Aug. 31 | 9 lds | 120.00 |
| | lds | 50.00 |
| | Total | |
| Sept. 1 | 3 Combined | 635.00" |

State's Exhibit 17 starts with August 29, 1970. Apparently dated September 3, the following notation is found: "find a house for rent." (This is the date the co-defendant Miss Faubian negotiated for the lease, and the day before it was signed by appellant.)

The entry under debts September 3, 1970, shows "Mark T." apparently another name, and "HSH $50.00" and "55+4 cps." It also shows a telephone number and "Mr. King." (The record shows that Miss Faubian first negotiated the lease and put up the deposit on September 3 with Mr. King.)

Another page is as follows:

| "3rd Sept. | |
|---|---|
| Deposit | $50.00 |
| 1 yr | 40.00 |
| Arnold | 30.00 |
| " | 35.00 |
| N.S.C. | 20.00 |

A following page reflects the following entry: "I owe Arnold $80.00."

State's Exhibit 18 contained bookkeeping entries similar to those in the other two exhibits.

State's Exhibits 21, 21A, 21B, 21C and 21D, which were found in the front bedroom near where Neal was found, were all introduced.

The first of these exhibits was correspondence addressed to Arnold James Neal

at 607 E Baylor in Austin. The next exhibit was a change of address card bearing the signature "Arnold Neal," 607 E Baylor St. from 807 E 30 St., both in Austin. (This latter address was shown to have been the one where Miss Faubian had clothes and evidence was offered through her step-father and that apartment owner in an effort to show she did not live at Baylor Street.)

State's Exhibit 21C, apparently from a larger spiral notebook, is a photocopy of a page appearing in the record and is as follows:

```
                              $145    $155
"Ron     $105      120      $135       15
                                     $140
                                     $100

 Gene    $5
 Rick    $5
 Mark    $2
 $15 missing 14 pill let with Ron"
```

The second page is as follows:

```
"Gene    $5
  *   *
  *   *

 Rick    $5
 Mark    $2
 Ron     $105
"    9/8/70
 1.  4  G    $160
 2.  $140   My Money   9/8/70
 3.  first G 23 pills   $115 = $75 profit
 4.  3 G at $50 = $30 profit
 5.  second G 20 pills = $100 = $60 profit
 6.  third G 21 pill $105 = $65
 7.  four G 20  pill $100     60
Ron = $30 for rug           $75
      $25 for speed         $30 paying the $30 dollar for Tom
      $15 for food          $105
      $40                   $15 dollars payment on 3 pills that
                                   were lost
      $10 for G             $15 for three pills   9/11/70
      $50                   total $135
      $25 worth of pill     2 pills $10      9/11/70
      $75                   2 pills $10      9/11/70"
```

The exhibits in the 21 series were admitted without objection. The name Ron appears also in the 21 series of exhibits. (The appellant's first name is Ronald.)

One of the officers testified that the term "hash" or HSH referred to hashish and that the term "lid" meant a one-ounce package of marihuana, and that "G" referred to a gram of either heroin or marihuana.

The evidence shows all three of of the coindictees were acting together as principals and is sufficient to support the conviction of the appellant.

*Admissibility of Notebooks*

The appellant contends that the admission of the notebooks, State's Exhibits 16, 17 and 18, was reversible error.

The case was tried on the theory of principals. The three were indicted as principals. It is not necessary for those acting together as principals to be indicted as such before evidence of acts and conversations

of each participant be admissible as to conspirators. Phelps v. State, Tex.Cr.App., 462 S.W.2d 310; Parnell v. State, 170 Tex. Cr.R. 30, 339 S.W.2d 49 (1959). The theory of principals necessarily involves conspiracy and in most cases such is shown by circumstantial evidence. Each statement or act of a co-conspirator up until the time the object of the conspiracy is completed is admissible. Phelps v. State, supra.

Even if the entries in the notebook were made by Neal, Faubian, the appellant, or someone else connected with the offense, they would be admissible as an act of the conspiracy. The fact that Neal had been tried and convicted does not prevent his part in the crime from being admissible. See Parnell v. State, supra. Acts and declarations of one co-conspirator during the furtherance of the conspiracy are admissible against other conspirators whether or not the act or declaration occurred out of the presence of and hearing of the conspirator on trial. See Phelps v. State, supra, and Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146.

In the Parnell case, supra, the defendant was indicted in one count as a conspirator and in another count for embezzlement. The State dismissed the conspiracy count. Parnell argued that this was tantamount to a finding of not guilty as to his being a conspirator. The Court wrote:

"Assuming that appellant stood acquitted of the substantive crime of conspiracy, this did not deprive the State and the jury of the evidence tending to establish the conspiracy, including the acts and declarations of his coconspirators, in considering the charge of embezzlement in pursuance of the common design or conspiracy. Richards v. State, 53 Tex. Cr.R. 400, 110 S.W. 432; Holt v. State, 39 Tex.Cr.R. 282, 45 S.W. 1016, 46 S.W. 829; and 9 Tex.Jur., § 14, p. 392 and 393, . . . . ."

In the case of Phelps v. State, supra, the conviction was for robbery. The State was allowed to prove, even though the robbery was completed, that the purpose of the robbery was to get funds to buy arms at the Cuban Embassy in Canada. There the Court cited 23 Tex.Jur.2d, Evidence—Criminal Cases, Section 128, page 186:

"Although the existence of a motive is not essential to a conviction, nevertheless the presence or absence of a motive for a crime is obviously a factor that is related to the question of the defendant's guilt or innocence. Consequently, proof of any existing motive for the offense is generally held admissible, . . . ."

The Court also cited 23 Tex.Jur.2d, Section 199, page 309, which reads:

"Evidence of the commission of other crimes by the accused is admissible to show a possible motive for his commission of the crime with which he is charged."

The Court held that a handwritten list of weapons titled "Alex List," which was found in the accused's purse when she was arrested, was admissible to show motive. The list included:

"1. M–1 Carbines—5 With banana clips
                                and extra clips
"2. Sub-Machine guns—3
"3. 50-calibre          " —1
" * * *
"10. Grenades—50"

Even though this list could be construed as showing possible extraneous crimes, it was held admissible to show motive.

The notes in the present case showed the motive or purpose for which the narcotics were kept. See Gonzales v. State, Tex.Cr. App., 410 S.W.2d 435; Collier v. State, 167 Tex.Cr.R. 534, 321 S.W.2d 584, and Hemmeline v. State, 165 Tex.Cr.R. 583, 310 S.W.2d 97. Cf. Greer v. State, Tex.Cr. App., 474 S.W.2d 203.

Recently, in Phenix v. State, Tex.Cr. App., 488 S.W.2d 759, the accused was ar-

rested in his garage apartment and a handwritten note was found on a desk. It read:

"A. P.          Fri.

"More on the way. I still owe you four lids worth. I'll check with Dan on the 150 tomorrow.

C.P."

The accused's full name was Robert Alan Phenix. The note was offered as res gestae of the offense. The Court wrote:

"A written extrajudicial utterance may be admissible in evidence to prove the truth of the assertions made; that is, for its testimonial value, if one of the many exceptions to the hearsay rule is satisfied, 5 Wigmore, Evidence § 1420, et seq. (3rd ed. 1940); McCormick, supra, at 480–625, or it may be admissible in evidence without regard to the truth of the assertions made; that is, for its non-testimonial value, as a circumstance, provided it is legally relevant. Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App. 1971); 6 Wigmore, supra, § 1788–1792. The latter use of the extrajudicial written utterance to which the hearsay rule does not apply has sometimes not been fully articulated and has been said to be part of the res gestae.

"The note was not offered or received in evidence for its testimonial value; that is, for the truth of the assertions made. The note was not admitted to show 'more on the way,' that 'C.P.' 'owed' 'A.P.' 'four lids worth' or that 'C.P.' was going to 'check with Dan on the 150 tomorrow.' "

See also Jones v. State, Tex.Cr.App., 472 S.W.2d 529.

In the case of Catching v. State, Tex.Cr. App., 364 S.W.2d 691, the conviction was for abortion. A confession which showed that the accused committed other abortions was admitted over the objection that it included offenses other than that for which he was on trial. The Court held evidence of the other offenses was admissible under Housman v. State, 155 Tex.Cr.R. 49, 230

S.W.2d 541, another abortion case. In Housman, the Court wrote concerning other transactions:

"If such transactions disclosed, by inference or otherwise, that appellant was engaged in the commission of other acts of abortion, it was nevertheless admissible as a part of the res gestae.

\*     \*     \*     \*     \*     \*

"If the State's proof of the home of appellant and the furniture, instruments, and equipment therein and the facts showing the use of such home and contents on the witness for the purpose of aborting her for pay show that appellant was a professional abortionist or that her home contained a room equipped as an abortion operating room, such result does not change the rule as to the admissibility of such evidence as a part of the res gestae.

"Nor did the evidence become inadmissible because appellant did not testify or otherwise controvert the testimony as to her acts and intent."

Article 38.22, Section 1(f), Vernon's Ann.C.C.P., provides, in part:

"Nothing contained herein shall preclude the admissibility \* \* \* of any statement that is res gestae of the arrest or of the offense."

While the meaning of this provision is not exactly clear, the Legislature apparently intended to keep in effect the previous decisions of this Court concerning the res gestae of the arrest or of the offense.

In Yaffar v. State, 171 Tex.Cr.R. 341, 349 S.W.2d 730, a driving while intoxicated case, this Court held that testimony of the officers about finding a pistol in the car was admissible as res gestae.

Barbiturates and a pistol found in an automobile in which an accused had been riding just before being arrested for possessing marihuana were held to be a part of the res gestae in Beeler v. State, Tex. Cr.App., 374 S.W.2d 237.

In Vavra v. State, 171 Tex.Cr.R. 24, 343 S.W.2d 709, 712, the following is written:

" * * * Acts done, statements and appearances of the participants, and other similar circumstances are all admissible as part of the res gestae when a witness narrates the events surrounding an offense."

In Denny v. State, Tex.Cr.App., 473 S. W.2d 503, (reversed on other grounds on motion for rehearing), this Court held:

"While the testimony in the present case about the appearance of the three co-defendants at the time of their arrests when they possessed marihuana added nothing toward proving their guilt or innocence, it was admissible as a part of the res gestae of the offense and arrest."

In Flores v. State, 89 Tex.Cr.R. 506, 231 S.W. 786 (1921), the conviction was for murder. The accused and others in jail killed a jailer. A short piece of iron wrapped in wire and covered by a rag was found behind a radiator in the jail. This was admitted over the objection that the weapon was not shown to have any connection with the homicide, and that the defendant was not shown to have any knowledge of the same, and therefore, could not be bound by the existence or finding of such object. Judge Lattimore, speaking for the Court, held the evidence admissible and wrote:

"It was a part of the res gestae of the transaction. We are also of [the] opinion that, when parties are charged with acting together in the commission of a crime, evidences of preparation of, or weapons found on, anyone of them, whether before, during, or so soon after the commission of the offense as to shed any fair light on the act or intent of such alleged participants, would be admissible against each or all of them."

We hold the court did not err in admitting the notebooks as a part of the res gestae of the transaction and arrest.

Even if it could be assumed that the admission of the notebooks complained of was error, such would be harmless error. The officers found such a large amount of heroin, marihuana and other drugs in the apartment plus all of the other circumstances surrounding the arrest so that the jury could only logically conclude that these drugs were in part possessed for sale. See Phenix v. State, supra, and the cases there cited.

In addition to the above, the State offered the exhibits, designated as the 21 series, and the appellant's counsel stated he had no objection. In these exhibits found near Neal, the name of "Ron" was found in connection with narcotics. The jury, no doubt, got substantially the same impression from these exhibits as it did from those exhibits complained of.

Next, the appellant complains that the court erred in admitting the notebooks heretofore discussed because the request for the search warrant was to search for such personal property described in the affidavit and that such personal property mentioned was "Heroin and Marijuana" and that the search should not have been broader than the property set out in the affidavit. As noted earlier, this Court no longer holds inadmissible "mere" evidence obtained as a result of a search warrant. In Haynes v. State, Tex.Cr.App., 475 S. W.2d 739, this Court held that an officer could testify that an envelope addressed to Haynes found in a box in which the marihuana was found was admissible. The Court also noted that the "mere evidence" rule was no longer followed by this Court.

The Court, in Haynes, noted that the envelope was the connecting link between the accused and the narcotic drug.

In the present case the notebooks showed a connecting link between the appellant and Arnold Neal as well as their connection with the apartment and the drugs. The notes are admissible on the theory of conspiracy or principals as well as a part

of the circumstance of the transaction and arrest.

The officers in the present case were on the premises with a search warrant and found the notebooks within the duffle bag that contained much marihuana and other contraband. They had a right to take the bag and its contents.

Complaint is also made that the search was illegal because the affidavit for the search warrant does not contain a recitation that the affiants believed that the heroin and marihuana were possessed in violation of Article 725b, Section 16, Vernon's Ann.P.C.

There is no way that either of the co-indictees could have lawfully possessed heroin. We hold again as we did in Faubian v. State, supra, that no such recitation in the affidavit is required.

Without setting out the affidavit for the search warrant, it has been reviewed and states sufficient facts for probable cause.

The appellant's contention of jury misconduct about the discussion concerning the length of time that one might have to serve under certain sentences does not present reversible error.

No reversible error appears in the record. The judgment is affirmed.

ROBERTS, J., *concurs in the result.*

## OPINION

## ON APPELLANT'S MOTION FOR RE-HEARING

ROBERTS, Judge.

■ On original submission in this case, the majority affirmed on the basis that this was a conspiracy. A conspiracy was not pled, proven, or briefed in this case. It is axiomatic that before such exhibits could be admissible there must be proof that the act or declaration is, in fact, the work of a co-conspirator. 2 Branch's Ann.P.C., Sec. 721–722.

That opinion primarily relied upon three cases to support its conspiracy theory. We have examined these cases and find the following:

In Phelps v. State, 462 S.W.2d 310 (Tex.Cr.App.1970), the evidence clearly showed a conspiracy. It was proven that the accused there conspired with others to obtain funds to purchase weapons through the Cuban Embassy in Canada. There was proof that the defendant discussed the robbery with others and planned it; the purpose of the robbery was clearly established, i. e., to buy guns in Canada. The robbery was rehearsed in a house owned by the defendant. In summary, such acts and declarations were obviously the product of a co-conspirator.

In the case of Parnell v. State, 170 Tex. Cr.R. 30, 339 S.W.2d 49 (1959), the offense charged was embezzlement. Again, there was evidence showing a conspiracy by the promoters of a certain stock. In addition, the jury *was* charged on the law of conspiracy, as well as on the law of principals.

In the third case relied upon, Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146 (1959), the evidence clearly showed accused and another person acting together, in the unlawful sale of marihuana, and there was accomplice witness testimony to this effect.

The conclusion reached in the original opinion is a unique one—that on appeal, and it being mentioned for the very first time, a theory of conspiracy may be developed, not by the prosecuting authorities, but by *this* Court, and a decision affirmed on that basis. In the cases cited, the evidence of the conspiracy is unquestioned. In the instant case, it is highly doubtful that we should even reach that question since there is not even an affirmative link *shown* between the "declarations" in the notebooks and the appellant. The fact re-

mains that these exhibits were *never* authenticated as the product of a co-conspirator. Surely, this Court cannot infer that essential element. But that is what occurred on original submission.

In order to answer other arguments upon which the original opinion relied, the following facts are necessary.

The evidence reflects that on September 16, 1970, four officers of the Austin Police Department executed a search warrant at a house located in the City of Austin. Three of the officers entered the house together, while one of the officers remained outside until called by one of the officers who entered. The officers entered into a living-room and passed through it to the front bedroom. In the front bedroom they saw a man, later identified as Arnold Neal, asleep on a couch. One of the officers remained in the front room while the two other officers proceeded to the back bedroom. In the back bedroom, the officers found appellant and a woman, Faubian,[1] seated at a table upon which was a plate containing 39 capsules of heroin and various items of narcotic paraphernalia. As a result of a further search of the premises conducted by the officers, a "barracks bag" was found in a closet which was located in the kitchen of the house, immediately adjacent to the back bedroom. The bag contained a quantity of marihuana and three notebooks which contained written entries which appeared to be records of narcotics transactions. In a closet located in the front bedroom, a plate was found on which was a quantity of heroin and two hypodermic syringes. A group of papers which appeared to be records of narcotics transactions was also found in the closet.

Appellant raised eighteen grounds of error in his brief. In his second through eleventh grounds of error, he complained of the admission into evidence of the notebooks which were found in the closet adjacent to the bedroom where appellant and Faubian were seated.

The record reflects that the three notebooks in question were of the small spiral-binder type. They appear to be a record of personal expenditures by and money owing to the person to whom the books belong. Many of the entries are of a personal nature, such as "groceries $35.00." Others consist of a large number of given names, without surnames, followed by amounts of money, such as "Rooster $30.-00." In addition, there are a number of entries which appear to be in the nature of an inventory. For example, at several places in the books the heading "Assets" appears, followed by notations such as "Lds," "Gms Hsh," "Hsh," each of which is followed by an amount and an entry designated "cash value." One page bears the designation "Sales" and consists of a list of dates, each followed by a designation such as "7 gms Hsh" and an amount of money. The column of money is designated "Cash Profits." At several places in the books the headings or notations "Plds Sold," "Lds Sold," "Pills Sold," "One G," "Pills Left" etc., appear. One of the officers testified that the term "hash" referred to hashish, and that the term "lid" meant a one ounce package of marihuana, and that the term "G" referred to a gram of either heroin or marihuana. Appellant's name does not appear in the books, although the name "Ron" appears in several places, usually under the heading "Assets." Also, the name Arnold appears in several places such as in notations "Arnold's Money" and "I owe Arnold $80.00."

The papers which were found in the front bedroom included a University of Texas at Austin registration card, a business reply card addressed to a clothing firm, and a United States Post Office change of address card, all of which bore the name Arnold Neal (the man who was found asleep in the front bedroom) and the address of the house where the items were found. The notations on the papers were similar to those which were found in the notebooks.

1. See Faubian v. State, 480 S.W.2d 194 (Tex.Cr.App.1972).

Appellant objected to the admission of the notebooks on several grounds, but did not object to the admission of the papers found in the front bedroom, apparently because the items found with the papers connected them with Neal. This was part of appellant's defensive theory, i. e., that the narcotics belonged to Neal.

Appellant contended that the papers were inadmissible for several reasons, including that (1) they were not shown to have been written by him or that they belonged to him, (2) that they were irrelevant in a prosecution for unlawful possession of narcotics, (3) that they were unduly prejudicial as tending to show sale of narcotics, an extraneous offense, (4) that they were hearsay and did not fall within an exception to the hearsay rule, (5) that the notebooks were not part of the "res gestae," (6) that the content of the notebooks was not sufficiently identified and therefore the jury was allowed to speculate as to the meaning of the entries.

The record reflects that the court admitted the evidence "on the theory that they are part of the res gestae, and on the theory of co-principals charged in this case, as to guilt or innocence . . . . "

■■■ The notebooks were improperly admitted. In light of the court's statement, and in the face of appellant's objection on the ground (among others) that the notebooks were hearsay, the notebooks were not admitted for the truth of the matter asserted therein, and therefore were not hearsay. Unless an out of court statement is offered for the truth of assertion contained therein, it is not hearsay. E.g., McCormick & Ray, Texas Law of Evidence, § 781; Brown v. State, 74 Tex.Cr. R. 356, 169 S.W. 437 (1913). However, an extra-judicial statement or writing may be admitted as circumstantial evidence from which an inference may be drawn, and not for the truth of the matter stated therein, without violating the hearsay rule. McCormick & Ray, supra, § 796. *See* Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.

1972); Windham v. State, 169 Tex.Cr.R. 448, 335 S.W.2d 221 (1960). Therefore, assuming that the notebooks were so offered in the present case, the question which must be answered is "What was the inference to be drawn from the admission of the notebooks as circumstantial evidence?" It is obvious that the only inference to be drawn was that some person was dealing in narcotics and that the person was appellant. While it is possible that in order for such inference to be drawn it is necessary to consider the truth of the matters contained in the notebooks, we will assume, for the purpose of decision, that such inference can be drawn by considering the notebooks as circumstantial evidence only. We are therefore brought to the question of whether such an inference is relevant in a prosecution for possession of heroin and, if so, whether such evidence should be admitted or excluded as a matter of policy.

■■■ In a prosecution for possession of heroin, evidence that the accused has sold narcotics is evidence of an extraneous offense. While the general rule is that extraneous offenses are inadmissible as evidence of guilt, there are certain exceptions to the general rule, such as the exception that admits evidence of extraneous offenses to show knowledge. McCormick & Ray, supra, § 1521.

■■■ Knowledge (or criminal intent) is an essential element of the crime of possession of a narcotic drug. E.g., Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App. 1972); Fawcett v. State, 137 Tex.Cr.R. 14, 127 S. W.2d 905 (1939). Therefore, evidence which tends to show knowledge is a relevant part of the State's case in chief. Evidence that the accused has, in the past, sold the narcotic of which he is now alleged to have possession is of probative value in establishing knowledge. People v. MacArthur, 126 Cal.App.2d 232, 271 P.2d 914 (1954); Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962). *See generally*, Gonzales v. State, 410 S.W.2d 435 (Tex.Cr.

App.1966) cert. denied 387 U.S. 925, 87 S. Ct. 2044, 18 L.Ed.2d 982. That such evidence shows another crime is not objectionable. Evidence which tends to prove any material fact in connection with the offense is admissible despite the fact that it also shows the commission of other offenses. McCormick & Ray, supra, § 1521; Gonzales v. State, 410 S.W.2d 435 (Tex. Cr.App. 1966).

In light of the danger of prejudice arising from the use of evidence of the sale of narcotics, we would add one restriction on the use of such evidence in possession cases. That is, such evidence should not be introduced as part of the State's case in chief unless the case is based upon circumstantial evidence. Of course, in the technical sense, knowledge (or criminal intent), being an intangible, can only be proved by circumstantial evidence. By circumstantial evidence, however, we mean evidence from which knowledge cannot readily be inferred. For example, where the evidence shows that the accused was in the process of injecting a narcotic, or preparing it in a manner peculiar to that particular drug, then evidence of prior sales, while still relevant on the issue of knowledge, is not needed in order to prove the State's case, and, in light of that fact, should not be admitted because the value of such evidence is then outweighed by its tendency to prejudice the jury.

Of course, the State should not be limited in its ability to offer evidence in rebuttal, as where the accused admits possession, but denied that he knew the substance was a narcotic. See People v. Howard, 150 Cal.App.2d 428, 310 P.2d 120 (1957).

That being the case, evidence of a prior sale by appellant would have been admissible to show knowledge. However, we are faced with the problem of determining whether the notebooks were competent evidence of a prior sale by appellant.

If the notebooks were offered for the truth of the matters stated therein, they are inadmissible as hearsay, unless they fall within an exception to the hearsay rule. If offered against appellant, in order to be admissible, proof of execution by him must first be shown. Tipton v. State, 125 Tex.Cr.R. 658, 69 S.W.2d 1111 (1934). In this case, no evidence was offered as to the execution of the notebooks.

Likewise, even if offered as circumstantial evidence only, some connection to appellant must be shown. Here, it was shown that appellant had executed a lease of the premises prior to the date in question, and that he was arrested in reasonably close proximity to the notebooks. In order to connect appellant to the notebooks, it is necessary to infer that he controlled or occupied the premises and, from that inference, to infer that the items in the closet were his. This connection is too remote, in light of the potential for undue prejudice contained in the evidence. Unlike the papers in the front bedroom, no link between the notebooks and another person was found. This case is therefore easily distinguishable from our recent holding in Phenix v. State, 488 S.W.2d 759 (Tex.Cr.App.1972). in Phenix, the accused was arrested in his garage apartment and a handwritten note was found on a desk. The note read:

"A. P.    Fri.

"More on the way. I still owe you four lids worth. 'Ill check with Dan on the 150 tomorrow. ·

        C.P."

Defendant's full name was Robert Alan Phenix. Thus, an affirmative ownership link was established. This Court held that any error in admitting the note was harmless, in that there was an abundance of other evidence before the jury which suggested that Phenix was dealing in marihuana.

■■■■■ The State contended that the notebooks were admissible as part of the res gestae of the arrest. We disagree. It is true that evidence of tangible objects found during the course of a search is often admitted as "res gestae" as is evidence of various, seemingly irrelevant details of a transaction. This is permitted, even though the relevance of the evidence may not be readily apparent, because the law recognizes that transactions do not occur in a vacuum. By being informed of all the circumstances surrounding a particular transaction, the trier of fact is enabled to put the witness's testimony in its proper perspective, and to form a basis for judging the credibility of the witness. Some transactions are such that the "bare bones" of the occurrence might seem quite plausible, but when related in context seem very unlikely to have actually occurred (or vice versa). Therefore, such evidence is usually admitted even though its relevance is not shown, or, even if irrelevant, unless it is unduly prejudicial. McCormick & Ray, supra, § 911. In this case, the notebooks not being admissible as evidence of a prior sale, if admissible at all, must be "res gestae." However, due to their prejudicial nature, it cannot be said that their admission would be harmless.

Appellant's motion for rehearing is granted, and the judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

A majority of the Court now reverses this conviction after it was affirmed by a unanimous Court.

### Conspiracy

The majority apparently reverses for the reason given in the following statement in its opinion: "A conspiracy was not pled, proven or briefed in this case." In addition to the above statement taken from the motion for rehearing, counsel for appellant stated in his motion that conspiracy was not urged by the State.

At the outset we note from the record that Mr. Nelson, the assistant district attorney, argued in part as follows:

"All right. What is the evidence of possession? Renting a house under an assumed name— And through some marvelous ability Mr. Minton has testified to you that this really is of no significance. Is that really true? Is that really true? That this doesn't mean anything to you at all? *It's your first evidence in point of time, folks, of a conspiracy in which the defendant Faubian and the defendant Arnott participated.* If you don't think it's conspiracy, you have to believe that somehow each of them independently arrived at the name Orbitt and showed up there and gave his name. But they did get together, and you know they got together because they were going to rent a house, were going to use the name Orbitt. And you will be Mrs. Orbitt and I will be Mr. Orbitt. And so Miss Faubian went down and approached the real estate agent and put down a $100 deposit and introduced herself to him as Mrs. Orbitt. And then on the 4th Mr. Orbitt, alias Arnott, showed up and signed the lease. And there are the terms. Remember those terms? $100 deposit and a hundred and sixty dollars a month rent. Keep those in mind, will you?" (Emphasis supplied)

The theory of conspiracy was argued to the jury and was before the trial court and this Court.

The majority in its opinion does not recognize the difference between the substantive crime of conspiracy and the rules of evidence where people were acting together as principals or conspirators.

The appellant Arnott, Neal and Miss Faubian were indicted as principals. Arnott and Miss Faubian were tried jointly as principals. The theory of the State was that the three were acting together in the possession of the narcotics. The trial court submitted the charge to the jury on the law of principals and circumstantial

evidence. Where principals are involved, a conspiracy is necessarily involved.

Article 65 of the Penal Code and the four succeeding Articles provide in substance that all persons acting together in the commission of an offense are principals. These Articles also provide in certain cases that those who agree to commit a crime and who are doing something during its commission are principals.

The substantive crime of conspiracy is an agreement to commit a felony offense. See Article 1622, Vernon's Ann.P.C. One does not have to be named in an indictment as a conspirator before evidence of a conspiracy can be introduced. One does not have to be charged in an indictment as a principal before such evidence can be introduced.

Proof that two or more people acting together in the commission of a crime which is a conspiracy can be made and relied upon even though it is not alleged. A conspiracy is an agreement manifesting itself in words or deeds by which two or more persons confederate to do an unlawful act. Young v. State, 150 Tex.Cr.R. 378, 201 S.W.2d 46. A conspiracy can be established by circumstantial evidence. Roberts v. State, Tex.Cr.App., 375 S.W.2d 303; Westfall v. State, Tex.Cr.App., 375 S.W.2d 911; Price v. State, Tex.Cr.App., 410 S.W.2d 778; Rice v. State, 121 Tex.Cr.R. 68, 51 S.W.2d 364.

A conspiracy can seldom be established by direct evidence. Carter v. State, 135 Tex.Cr.R. 457, 116 S.W.2d 371, 382. Narcotic dealers, like other professional criminals, do not widely publicize their agreements or plans to officers.

It is not necessary for the State's brief to contain a statement of every rule of law relied upon for the affirmance of a conviction if a case has been correctly tried. The matters we consider are the rulings of the trial court, not the reasons attorneys give to uphold their contentions. Briefs and arguments are only aids for reaching a just decision. Neither a confession of error by the State nor an admission by counsel for appellant that no reversible error is shown is binding on the Court. Even if a trial judge relies upon a wrong ground or gives the wrong reason for a ruling, this Court is not bound to limit its consideration to such a reason if the decision below is correct. O'Neal v. State, Tex.Cr.App., 491 S.W.2d 130; Parsons v. State, Tex. Cr.App., 271 S.W.2d 643. The Supreme Court of the United States recognizes this rule in Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 158, 82 L.Ed. 224.

For cases where a conspiracy was not alleged in the indictment and convictions were upheld on evidence of a conspiracy, see Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822. In that case the conviction was for the possession of heroin. Conspiracy was shown between Alvarez and Aguero. This Court held:

"The acts and declarations of one co-conspirator are admissible against other conspirators during the furtherance of the conspiracy."

In Saddler v. State, 167 Tex.Cr. 309, 320 S.W.2d 146, the conviction was for the sale of marihuana. Conspiracy was not alleged. The Court held:

*"Proof that the appellant and Brackins were acting together in selling the marijuana was sufficient to establish a conspiracy between them to commit the offense."* (Emphasis supplied)

and

"The rule is well settled that the acts and declarations of one conspirator during the furtherance of the conspiracy are admissible against the other conspirators. 4 Branch's Ann.P.C. par. 2243, pages 602 and 603; Weston v. State, 164 Tex.Cr.R. 222, 297 S.W.2d 681; Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822, and Angle v. State [165 Tex.Cr.R. 305] 306 S.W.2d 718. This rule applies though the act or declaration occurred out of

the presence and hearing of the conspirator on trial. Braley v. State, 156 Tex. Cr.R. 15, 238 S.W.2d 539."

In Angle v. State, 165 Tex.Cr. 305, 306 S.W.2d 718, the substantive crime of conspiracy was not alleged. Angle complained because the court admitted evidence of ancillary offenses. The Court held the acts of the co-conspirator Nesbit were admissible. See the other cases cited in the opinion on original submission.

Under the authority of the above cases, even if the entries in the notebook were made by Neal, Faubian, or the appellant, or someone else connected with the offense, they would be admissible as an act during the conspiracy. See McElwee v. State, Tex.Cr.App., 493 S.W.2d 876.

The statement of the majority that a conspiracy was not alleged is incorrect because appellant was alleged to be a principal. The statement of the majority that a conspiracy was not proved is incorrect. The evidence heretofore and hereafter set out shows that Arnott, Neal and Miss Faubian were acting together.

It is hard to understand the attempted distinction of Parnell v. State, 170 Tex.Cr. R. 30, 339 S.W.2d 49, by the majority. The majority states in that case "the jury was charged on the law of conspiracy." Is this some new rule or theory that where a charge on principals has been submitted to the jury the court must charge on conspiracy for the judgment to be valid? (Would such a charge be a comment on the weight of the evidence?) The Parnell case held as noted in the original opinion by this writer that even after the charge of the substantive crime of conspiracy had been dismissed from the indictment that this "did not deprive the State and jury of evidence *tending to establish the conspiracy. . . .*" (Emphasis supplied)

Surely the majority is not holding that such a charge makes the evidence admissible. Does the holding mean that the theory of conspiracy must be spelled out more fully before the case is argued to the jury even when principals have been charged in an indictment?

Is the majority now changing the rules of the game (after it has been played) like from regular pool to call shot? The reversal now is apparently for the reason that conspiracy was not the called shot other than in the argument of the prosecutor before the jury and the trial court which is in the record before us. Does the majority now require that where principals have been charged in an indictment that the word "conspiracy" be included before evidence of a conspiracy can be relied upon for a conviction? If so, the majority is overruling the Parnell case, supra, and all the previous law on evidence of a conspiracy. The bench and bar should be informed just what cases are being overruled.

### Connection With Notebooks and Contraband

The majority states that no connection between Arnott and the notebooks is shown and states that he did lease the premises prior to the date in question and was arrested in reasonably close proximity to the notebooks.

The record shows that Faubian made arrangements to rent the premises under the name of Orbitt and that Arnott rented the premises under the name of John Orbitt a day or two later and some two weeks before the search of the premises. Further, it is shown that when officers entered the residence to execute the search warrant both Faubian and Arnott were found in the back or southeast bedroom sitting around a small table upon which were found 39 capsules of heroin on a plate, three syringes, two spoons and cotton as well as other narcotic materials. Both had fresh needle marks on their arms. In the closet of that same bedroom the duffel or barracks bag containing the notebooks was found.

The appellant's brief states that the duffel bag was found in a closet near the back bedroom. The drawing referred to in the testimony of the officers is not a part of the record. W. R. Webb, one of the officers who conducted the search, was asked where he found the exhibits. He answered:

"A. In the—what we have referred to as, I believe, the back bedroom where the two defendants were found. A—the green barracks bag —

"Q. That bedroom?

"A. That bedroom, a green barracks bag I found in the closet just to the left upon entering into the kitchen.

. . . . . .

"Q. Are you then referring to the southeast bedroom and speaking of a closet on the north wall of that southeast bedroom?

"A. That is correct. And to the west of the door entering into the kitchen.

"Q. You found the duffel bag?

"A. The duffel—the barracks bag or duffel bag, which is the green one.

"Q. Were all of the exhibits in the duffel bag?

"A. Yes, the brown haversack bag was in the green barracks bag. Everything was in there together . . . ."

On cross-examination by Mr. Clinton, appellant's attorney, concerning the duffel bag or haversack and the included materials, the following occurred:

"Q. . . . there was nothing in there at all to identify the defendant Faubian or the defendant Arnott in connection with those bags, is there?

"A. May I say, too, this was in there.

"Q. Well, whatever the exhibits were that have been admitted here into evidence, there was not, was there?

"A. Other than it was in their bedroom and, of course, there were some other items that were in there.

"Q. I am asking you about what's in evidence here as coming from the duffel bag that's now in evidence?

"A. No, sir. It was just in their room."

Webb was asked if he found any capsules similar to those on the plate in the southeast or back bedroom, and he answered:

"We have other—there are other displays here that was in the haversack. . . ."

He also testified that he went immediately to the back bedroom on arriving, and "There is a closet right here in this bedroom, just to the right of the door. From this closet I got this barracks bag containing the brown haversack. . . ." He also testified, "[i]n this closet there were clothes and—both girls' and men's clothes."

From the above testimony it appears that the duffel bag containing the exhibits in question was found in the closet in the room where Arnott and Miss Faubian were found. See Frazier v. State, Tex.Cr.App., 480 S.W.2d 375.

The heroin found in the duffel bag in the back bedroom of Arnott and Faubian, each exhibit of heroin found on the table in that bedroom and the heroin found in Neal's room were 20.5% heroin. All of the heroin found in the house was of the same consistency whether it was in the capsules or in the balloons. There were empty capsules found in the duffel bag. Traces of heroin were found on the narcotics paraphernalia in the back bedroom and in Neal's front bedroom.

A similar contention that there was no connection with the evidence was made in

Flores v. State, 89 Tex.Cr.R. 506, 231 S.W. 786, cited in the opinion on original submission. In that case a piece of iron that could have been used as a weapon not shown to be directly connected with either of the principals was found in the jail after the jailer was killed. The Court held it admissible. See the quoted part in the original opinion.

Also the Parnell case, supra, gives the correct rule that the State could offer evidence *tending to establish* the conspiracy.

After the original opinion in this case was written, Presiding Judge Onion wrote for this Court in Alba v. State, Tex.Cr. App., 492 S.W.2d 555. There the conviction was for the possession of heroin. Contraband was found in a cemetery east of Austin. Alba complained that the court erred in admitting an exhibit containing heroin which was found two days prior to his arrest. None of the surveilling officers had seen Alba or his co-defendant at the exact location where the exhibit was buried nor had they seen the exhibit in the physical possession of the appellants. This heroin was approximately 2/3 of the total amount discovered. All of the heroin was packaged alike and the heroin (like in the present case) contained the same molecular structure indicating that each exhibit came from the same origin. This Court wrote:

"In some cases, as in the one at bar, possession must be proved by the introduction of circumstantial evidence. Such evidence must affirmatively link the person accused to the narcotic which he allegedly possessed. Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1972). This affirmative link is established by showing additional independent facts and circumstances which indicate the accused's knowledge and control of the narcotic. Collini v. State, supra [Tex.Cr.App., 487 S.W.2d 132]

"The evidence presented shows that there were additional independent facts and circumstances affirmatively linking the appellants to the heroin contained in State's Exhibit 14."

Doesn't this evidence connect Ronald Arnott with the duffel bag, narcotics, and paraphernalia and the notes more than the exhibit buried in a cemetery connected Alba to that heroin?

When one has rented and has control of the premises, expecially a closet in his bedroom, with apparently his name on the exhibit, is not this enough to connect him with it? How much more is the State required to prove? Under the ruling of the majority, which holds that the evidence does not show Arnott connected with the items found in the closet in his bedroom, the State would have insufficient evidence to connect and convict one for the possession of contraband found in his bedroom closet. Surely the majority does not intend to go this far.

In Williams v. State, Tex.Cr.App., 498 S.W.2d 340, this day decided, this Court held that where the accused had rented a trailer house some six days before and heroin and other contraband were found in his bedroom the evidence was insufficient to support the conviction. Williams was in the kitchen; he had needle marks on his arm (the officer did not testify as to their freshness). The majority reversed because no connecting link was shown. In the present case they reversed because the connecting link was shown. Which rule does the trial court follow?

The reasoning of the majority that evidence such as complained of here can be admitted in circumstantial evidence cases, but not strong circumstantial evidence cases, and only in those cases where one admits possessing a container but not knowing what the container contains, will not be discussed because this writer does not understand it nor does he see how a trial court can follow such reasoning, especially in view of the past decisions of this Court which are not distinguished.

This Court has held even on pleas of guilty where direct evidence has been of-

fered that other circumstances may be shown. In Asay v. State, Tex.Cr.App., 456 S.W.2d 903, this Court held:

" . . . The State's right to introduce evidence is not restricted by entry of a plea of guilty by the defendant, or by his admission of facts sought to be proved. Brookens v. State, Tex.Cr.App., 438 S.W.2d 577; Whan v. State, Tex. Cr.App., 438 S.W.2d 918, 56 Tex.Jur.2d, Trial, Sec. 130; Beard v. State, 146 Tex.Cr.R. 96, 171 S.W.2d 869. There is no limit, either by statutory direction or judicial interpretation, upon the kind, character or amount of relevant testimony which the State may introduce upon a plea of guilty. Whan v. State, supra; Brooker v. State, 124 Tex.Cr.R. 562, 63 S.W.2d 1033."

See Beard v. State, 146 Tex.Cr.R. 96, 171 S.W.2d 869 (1943), to the same effect. This case has been cited too many times to set out here. It has not been overruled.

If the State is not limited in the amount and extent of proof when a defendant has pled guilty, why should it be limited in the amount of relevant evidence where a defendant has entered a plea of not guilty? The reason for such a different rule would be more erroneous in the present case where Arnott wanted the notebook found near Neal introduced in an effort to show that Neal possessed all of the contraband. Those notes contained the name of "Ron" and showed Neal paid $80, one-half of the first month's rent for the house, and other connecting evidence.

How would a trial judge rule in a similar case in the future? In the present case the trial judge was cited three cases as authority of the introduction of the evidence.

The trial court was well acquainted with the first of those cases, Windham v. State, 169 Tex.Cr.R. 448, 335 S.W.2d 221, where the prosecution was for the possession of whiskey, gin, vodka and malt liquor for the purpose of sale. In that case the landlady testified that Windham and Jerry Ray James came to see her about renting an apartment. James did the talking and Windham furnished the money for the first month's rent.

With a search warrant, the officers found 314 half-pints of whiskey and other containers of gin, vodka and malt liquor. At the time of the search, officers found beer in an automobile in the apartment garage. James and Windham were in jail at the time. The Court found that the evidence showed that the two occupied the apartment and had joint control over the contents.

Windham objected to the introduction of three pieces of paper found in the apartment. One of the pieces of paper was definitely not in Windham's handwriting, but this Court held it was admissible to show that he shared the apartment with Jerry James. One piece of paper read:

| "April 29 | 5 cases | 286.00 |
| May 1 | 5 cases | 277.00 |
| May 1 | 16 Jax | 68.00" |

This was not shown to have been in Windham's handwriting. The conviction was affirmed in part on the basis of harmless error. However, on motion for rehearing, this Court held that the three pieces of paper found by the officers in their search of the apartment were a part of the res gestae of the transaction and the evidence was admissible as such. The majority now does not distinguish or overrule Windham.

There were several connecting links in this case—much more than in the Alba case, supra.

### Extraneous Offenses

The majority adds an apparently new restriction on the rule against the admission of extraneous offenses. Even though it recognizes that appellant's defense was that the narcotics belonged to Neal.

When the notebooks were admitted they were admitted for all purposes. The majority asks the question, "What was the inference to be drawn from the admission of the notebooks as circumstantial evidence?" To answer that question, it is obvious that the most logical inference to be drawn was that some person was dealing in narcotics and that person was the appellant. The majority recognizes the rule that evidence of extraneous offenses may be introduced to show knowledge and cites McCormick & Ray, Texas Law of Evidence, Section 1521, and Gonzales v. State, Tex.Cr.App., 410 S.W.2d 435. The majority then adds "one restriction on the use of evidence in possession cases," that is, such evidence should not be introduced as a part of the State's case in chief unless the case is based upon circumstantial evidence. This case was based upon circumstantial evidence and the court so charged. Each attorney for the State and the defense argued that this was a circumstantial evidence case. No doubt a reversal would be had if there had not been a charge on circumstantial evidence. See Denny and Forfar v. State, Tex.Cr.App., 473 S.W.2d 503; Ramos v. State, Tex.Cr.App., 478 S.W.2d 102.

The majority opinion by dictum adds a novel rule that further restricts the admission of such evidence to instances where the accused admits possession but denies that he knows the substance was narcotics. Under this new rule, evidence in many cases which has been admissible to show the connecting link between the accused and the reason for its possession is no longer admissible. See Alba v. State, Tex.Cr.App., 492 S.W.2d 555, 560, and Phenix v. State, Tex.Cr.App., 488 S.W.2d 759, and the cases there cited. I see no reason for such a rule as the majority would adopt.

It has always been the impression of the writer where the State has evidence that is admissible whether it be direct or circumstantial it is admissible on the case in chief. It appears that the majority holds that it connected him too much with the notebooks and then later says that the connection was too remote and for the undue prejudice the evidence should not be admitted. Under which theory do they rely?

There is an attempt to distinguish Phenix v. State, supra, where initials were used and the note was shown to establish the ownership link. The Court held it was harmless in the Phenix case because there was an abundance of other evidence that suggested that Phenix was dealing in marihuana.

In the present case the other notebook found in Neal's room was introduced with the statement that there was no objection. This notebook contained the name "Ron" and showed similar transactions to those shown in the notebooks found in the closet. Isn't Neal's notebook enough evidence to adequately establish the appellant as a dealer in narcotics? The State in the argument to the jury stated that he was a dealer and that Miss Faubian rented or leased the premises so that they could set up a wholesale operation. Counsel for appellant made no objections apparently thinking that this was a reasonable deduction from the evidence. For cases approved by this Court where a large amount of narcotics has been shown and the argument was to the effect that it was for the purpose of sale see Ware v. State, Tex.Cr.App., 467 S.W.2d 256, and Archer v. State, Tex.Cr.App., 474 S.W.2d 484. The jury no doubt realized the narcotics were possessed for the purpose of sale.

Is the majority reversing this case because the proof was not good enough or on the ground that it was too good?

It is also hard to understand that because the evidence might be prejudicial it should not be admitted. Relevant admissible testimony is prejudicial or there is no need for it to be introduced into evidence. If one made statements to other people that he was selling narcotics, that would be admissible. Sutton v. State, 343 S.W.2d 452. If one writes statements that he is

selling narcotics, why is this not admissible? The evidence of the whole transaction should be admissible. Evidence extracted and placed in a vacuum is of little or no benefit to a jury.

In Alba v. State, Tex.Cr.App., 492 S.W. 2d 555, it was contended that "this large quantity of heroin allowed the prosecution to infer that the appellants were heroin suppliers and dealers, thus prejudicing the jury." The Court quoted from Miller v. State, Tex.Cr.App., 469 S.W.2d 180, 181:

"In a prosecution for possession of illegal drugs or narcotics, other illegal drugs or narcotics found at the same time and place are admissible, as they are part of the res gestae of the offense. Beeler v. State, Tex.Cr.App., 374 S.W.2d 237, cert. denied, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 51."

The Court also wrote:

"The introduction of State's Exhibit 14 was 'harmful [to the appellants] in the sense that all evidence tending to show guilt is harmful.' Smith v. State, 474 S.W.2d 486 (Tex.Cr.App.1971); Archer v. State, 474 S.W.2d 484 (Tex. Crim.App.1971)."

See Wright v. State, 168 Tex.Cr.R. 645, 330 S.W.2d 620, where the Court held that evidence that a companion of Wright possessed 4½ pints of liquor in a liquor case was admissible as res gestae.

In the present case the facts are interwoven and one transaction is shown just as it was shown in Alba's case.

A case submitted to the trial court was Gonzales v. State, Tex.Cr.App., 410 S.W. 2d 435. There, Gonzales complained of proof that narcotic addicts and users were seen entering and leaving his apartment because it showed or tended to show the sale of narcotics. This Court wrote and held:

"Even so, proof of the purpose for which the narcotics were possessed was admissible. The rule against admitting evidence of other crimes by the accused is inapplicable if such evidence logically tends to show his guilt of the crime charged, and is not too remote."

It can readily be seen that the trial court had ample authority to admit the notebooks in evidence at the time he ruled. These authorities have not been distinguished.

Another case which holds that relevant circumstances may be introduced to show that marihuana was being possessed for the purpose of sale and therefore had probative value is Collier v. State, 167 Tex. Cr.R. 534, 321 S.W.2d 584. Collier entered a plea of guilty to the possession of marihuana. He complained that since he admitted the offense the State should not have been permitted to prove matters which constituted an extraneous offense that he was the seller of narcotics. This Court overruled this contention and cited Hemmeline v. State, 165 Tex.Cr.R. 583, 310 S.W.2d 97, which held that even though an accused pleads guilty, legal evidence is always admissible to enable the jury to know what punishment should be assessed within the sliding scale of penalty fixed by the statute to the offense charged.

The holding or dictum by the majority that, if there is strong circumstantial evidence that an accused possessed narcotics in addition to needle marks on his arm, the State should not be allowed to make further proof of the circumstances is not in line with previous decisions of this Court. These decisions have not been distinguished or overruled. When new rules are established, the older cases should be overruled.

*Harmless Error*

Nothing more should be necessary, but other circumstances of the case should be noted to see if the error as the majority holds was harmless. Let us look to the details before State's Exhibits 16, 17 and 18, the questioned notebooks, were introduced.

**· 186**

During its direct examination of Deputy Webb, the State first sought to introduce these notebooks as res gestae of the offense. The trial judge, after conducting a hearing outside the presence of the jury, ruled them inadmissible. The State did not pursue the matter further. Then on cross-examination, the first question asked Deputy Webb by appellant's counsel was:

"Q. (By Mr. Clinton) Deputy Webb, have all of these exhibits, beginning with the State's Exhibit 9 what you have called a haversack, and the exhibits that were in the haversack, and then, as I say, the haversack and the duffel bag and the materials that were in the duffel bag, have all of those exhibits that have been presented up here, coming from the duffel bag, there is nothing in there at all to identify the defendant Faubian or the defendant Arnott in connection with those bags, is there?

"THE WITNESS: A. May I say, too, this was in there.

"Q. Well, whatever the exhibits were that have been admitted here into evidence, there was not, was there?

"A. Other than it was in their bedroom and, of course, there were some other items that were in there.

"Q. I'm asking you about what's in evidence here as coming from his duffel bag that's now in evidence?

"A. No, sir. It was just in their room."

Counsel was attempting to prove that appellant had no connection with the contents of the duffel bag.

At a later point in the cross-examination of Webb concerning the papers which had been found in the front room where Neal had been arrested, counsel for Arnott requested and obtained a hearing outside the presence of the jury. The following occurred:

"MR. CLINTON: Your Honor, when the State offered the Exhibit 21 series, we—

"THE COURT: Let me see those again.

"MR. CLINTON: Yes. I want to hand them up to the Court. We did not object because they were found, according to the witness' testimony, in the front bedroom and we thought, bearing Mr. Neal's name on at least three of them, that that was some indication with respect to Mr. Neal, and we considered it as an important part of the defense of Mr. Arnott that at least the matters in the front bedroom be shown, from our point of view. And for that reason we didn't object. Now, that sort of sets the stage, I guess, for—

"MR. MINTON: (Counsel for Miss Faubian) Well, the problem, of course, that I hope Mr. Clinton is anticipating is that counsel for the State is immediately going to say, 'You are not going to put in these books in the front room and try to try the man who is gone here today and tell me I can't get these books in the back bedroom,' and I would respectfully suggest to Mr. Burton and Mr. Clinton they think about it before they start withdrawing objections.

"MR. NELSON: (Assistant District Attorney) They want to have the cake and eat it too. That's usual. Your Honor, what I was wanting to bring up was that now, whereas we abided the Court's ruling, excluding all of these papers in the first instance on Direct, Mr. Clinton has pressed further and asks the witness Webb, and he, of course, heard your ruling, and obviously from his—he doesn't know how to handle it because he knew you would exclude it in the papers, and Mr. Clinton asked the question, in substance, was that there was nothing in this bag that identified the defendant Arnott or Faubian, and now I believe

he has opened the door, because there certainly is the name, Ron, mentioned in the papers that were found in the bag, and where as it was just zero at first, Mr. Clinton has now turned the Court's ruling into something that has put us in bad shape, and I believe he has opened the door for the admission of those notebooks that were in the duffel bag."

The record reflects that Mr. Clinton did object to the admission of the Exhibit 21 series when they were first offered. Immediately upon Mr. Burton's objection in behalf of Miss Faubian to the admission of Exhibits 16, 17, 18 and the 21 series, Mr. Clinton said: "We direct our objections to the Exhibits 16, 17 and 18, and adopt the statements and objections made by counsel."

Exhibit 21c of the 21 series (from Neal's room), which was admitted, was a larger spiral notebook. Counsel indirectly, if not directly, withdrew his objection and in effect asked that it be admitted. It contained the name "Ron", among others, as did the notebooks comprising State's Exhibits Nos. 16, 17 and 18. Co-counsel Minton recognized the admissibility of the notebooks found in the duffel bag if the papers and notebooks found in the front bedroom were admitted.

The court then admitted the notebooks from the duffel bag in question on the

"Ron =

| | | |
|---|---|---|
| | $30 | for rug |
| | $25 | for speed |
| — | $15 | for food |
| | $40 | |
| | $10 | for G |
| | $50 | |
| | $25 | worth of pill |
| | $75 | |

This adds up to $105, apparently paid to Ron.

theory that they were res gestae and on the theory of co-principals and for all purposes. Counsel had left the jury with the impression that there was no evidence in the duffel bag to connect either Faubian or Arnott with its contents, when in fact there was. The State may rebut such an inference with legally admissible evidence.

No abuse of discretion is shown by this record. A hearing was held outside the presence of the jury. The trial judge issued a ruling in favor of appellant. At the request of appellant's counsel a second hearing was conducted outside the presence of the jury. The trial judge then admitted the disputed notebooks as well as those to which defense counsel wished to make clear that he was not objecting or acquiescing in an objection to exclude the notebook and papers found in the front room where Neal was arrested.

Did the appellant invite or make harmless the admission of the notes from the duffel bag when he in effect requested the admission of the notes found in the front bedroom?

The first page of that notebook reads, in part: "Ron $105, Gene $5, Rick $5, Mark $2, $15 Missing 14 pill let with Ron." The second page shows transactions, according to Officer Webb's testimony, in narcotics. At the top of the page an entry reads "Ron $105." At the bottom of the page appears:

$75
$30 paying the $30 dollar for Tom
$105

$ 15 dollar payment on 3 pills
        that were lost
$ 15 for three pill    9/11/70

total $135

| 2 pills | $10 | 9/11/70 |
|---|---|---|
| 2 pills | $10 | 9/11/70 |

It appears the notebook objected to contained the same type of evidence that was

**188**

admitted at the wish of appellant. He cannot now complain. See 5 Tex.Jur.2d, Section 446, and the cases there cited.

This evidence introduced for appellant's defense also connected the appellant and Neal with the narcotics and proved a conspiracy.

The cases cited in the original opinion all hold that evidence tending to connect an accused with the crime is admissible, even evidence of sales or evidence tending to show sales or evidence to show motive for which the items are possessed.

It appears that the new rule of the majority is that evidence tending to show sales cannot be admitted if there is a lot of the evidence which might show one to be a large dealer or wholesaler because it is too prejudicial.

For all of the above reasons and authorities, and too many more to mention, and the reasons in the opinion on original submission, the conviction should be affirmed.

MORRISON, J., joins in this dissent.